Jesus AVILA, Petitioner–Appellant,

v.

George M. GALAZA, Warden; Attorney General of the State of California, Respondents–Appellees.

No. 01–55149.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 5, 2002.

Filed July 22, 2002.

---

**914**

Nancy S. Coan, Kaufman & Logan, San Francisco, CA, for the appellant.

Juliet H. Swoboda, Deputy Attorney General, Los Angeles, CA, for the appellees.

Before: PREGERSON, FISHER, and TALLMAN, Circuit Judges.

PREGERSON, Circuit Judge.

Jesus Avila ("Jesus") appeals the district court's denial of his federal habeas corpus petition. Jesus was convicted in the Superior Court of Los Angeles County, California, of attempted murder with the use of a firearm and sentenced to life plus eight years. Jesus asserts, among other claims in his state and federal habeas petitions, that he received ineffective assistance of trial counsel because his attorney failed to investigate or introduce at trial any evidence that Jesus's brother, Ernesto Avila ("Ernesto"), was the shooter. Following an evidentiary hearing in state court ("state habeas hearing"), Jesus's state habeas petition was denied. The district court adopted a magistrate judge's recommendation to deny Jesus's federal habeas petition. We hold that Jesus's trial counsel provided ineffective assistance of counsel because he failed to investigate and introduce evidence that would have raised a reasonable doubt about Jesus's guilt, and therefore reverse and remand this case to the district court with directions to issue the writ of habeas corpus unless California retries the defendant within 90 days.[1]

---

**1.** We review a district court's decision to deny a petition for writ of habeas corpus de novo. *See Miles v. Prunty,* 187 F.3d 1104, 1105 (9th Cir.1999).

**I.**

**A. Facts**

On August 19, 1990, Jesus, Ernesto, and thirty or forty other men and women attended a baby shower at Ham Park, which covers two square blocks in Lynwood, California. The partygoers congregated around a barbecue area and picnic tables in the northwest section of the park. Jesus and Ernesto, and several of the male attendees at the baby shower, were associated with the Young Crowd gang.

That afternoon, a group of black men, including Demetrius Kidd ("Kidd") and Romel Johnson ("Johnson"), entered the park and walked past the baby shower. Jesus and a male companion[2] approached the black men and had a friendly conversation. The black men admired the tattoos on Jesus and his companion, and both Jesus and his companion lifted their tank tops to display large tattoos on their backs. Jesus then offered to go get the person who did the tattoos. What happened next was disputed at trial.

Kidd and Johnson testified for the prosecution that Jesus returned five or ten minutes later with a large group of men and women. The men told Kidd and his friends to leave the park, and then started kicking and punching them. Kidd and Johnson both testified that they saw Jesus move away from the crowd as the fighting began and stand near a group of women. Johnson testified that, as he was fighting with members of the Young Crowd gang, he observed Jesus get what looked like a gun from a crack in the wall running along

---

**2.** Ernesto testified at the state habeas hearing that he was the person who accompanied Jesus.

the western edge of the park, near where the women were standing. Kidd and Johnson and one or two of their friends then began running away from the fight, toward center field of a baseball field in the southern half of the park. Kidd and Johnson testified that they looked back to see Jesus running toward them. Kidd then saw Jesus shoot a gun at them. The men continued running through the baseball field and toward Wright Road, which borders the eastern edge of the park. Kidd was shot behind his left ear when he was running across the street.

Jesus testified, in his own defense, that he was near the barbecue area of the park with his girlfriend, Joanna Espinoza ("Joanna"), when the shooting occurred. Jesus testified—consistent with Kidd's and Johnson's testimony—that he had a friendly conversation with a group of black men about his tattoos, and offered to get the person who did his tattoos. Jesus testified that the men declined Jesus's offer and Jesus returned to the baby shower to get some food. Soon thereafter, Jesus saw the black men spray painting gang signs on the wall at the western edge of the park and then saw a fight break out between a group of Young Crowd gang members and the black men. Jesus testified that he attempted, unsuccessfully, to break up the fight, and then walked toward Joanna, who was near the barbecue area. When Jesus heard shots, he dove to the ground with Joanna and Elizabeth Luis ("Elizabeth"), for whom the baby shower was held.

Three witnesses corroborated Jesus's testimony at trial. Elizabeth testified that she was with Jesus and Joanna when the shooting started and that the three of them dove to the ground. Blanca Monto-

ya ("Blanca")—Ernesto's girlfriend and another attendee of the baby shower—testified that she saw Jesus, Joanna, and Elizabeth getting up from the ground immediately after the shooting occurred. Alfredo Sanchez ("Alfredo")—who did not know Jesus and was not at the baby shower but recognized Jesus from the neighborhood—testified that he was in a house near the park when he heard shooting. When Alfredo looked outside the house, he saw Jesus covering two women on the ground.

## B. Jesus's Representation

Jesus was initially represented by George Denny ("Denny"), who was representing Jesus's brother, Ernesto, in another matter at the time. Shortly after Jesus was arrested, at least three people told Denny's investigator, David Lynn ("Lynn"), that it was Ernesto, not Jesus, who shot Kidd.[3] Shortly after the shooting, Ernesto met with Denny and Lynn and confessed that he, not Jesus, was the shooter. Attorney Denny withdrew from Jesus's case because he believed that Ernesto's confession created a conflict of interest.

Attorney Ted Yamamoto ("Yamamoto") was in the courtroom when Denny recused himself and was appointed by the court to represent Jesus. Denny "indicated" to Yamamoto that he recused himself from Jesus's case because he was "representing someone that ... might have been the shooter." At the state habeas hearing, Yamamoto explained that, based on this conversation, he thought that Denny "knew or had some idea who the real shooter was," and "thought possibly the investigation might start with discovering

---

**3.** Two of these witnesses, Angela Espinoza and Marcella Riboni, testified at the state habeas hearing that they told Lynn that they saw Ernesto shoot Kidd. A third witness, Joanna Espinoza, testified at the state habeas hearing that she told Lynn that Ernesto had admitted to her that he was the shooter.

that person's identity." Denny did not provide Yamamoto with information about the witnesses who had spoken to Denny's investigator, Lynn, and Yamamoto did not seek any information from Denny about the identity of the shooter.

Before trial, Yamamoto became convinced that Ernesto was the shooter. Although Yamamoto testified at the state habeas hearing that "a series of events" before trial caused him to conclude that Ernesto was the shooter, one conversation in particular solidified this conclusion. After a pretrial conference, Yamamoto told Ernesto's and Jesus's mother, Christina Avila ("Christina"), that he believed Jesus was innocent and asked Christina to "ask around the neighborhood or find out who is the shooter [because] . . . it would give us somewhere to go." Yamamoto testified that Christina "looked somewhat dejected and looked back up at [Yamamoto] very distraught, and she said, 'I think I know, but *it would be trading one for the other.*'" (Emphasis added). Yamamoto was so confident that Ernesto was the shooter that he told the prosecution that Ernesto was probably the shooter during plea negotiations.

Despite Yamamoto's belief that Ernesto was the shooter, he conducted no investigation to substantiate this belief and never instructed his investigator, Kazuo Sakamoto ("Sakamoto"), to seek out evidence implicating Ernesto. During the state habeas hearing, Yamamoto explained that he did not investigate Ernesto's involvement in the shooting because he assumed that Jesus and Christina, Jesus's mother, did not want him to implicate Ernesto at trial. As Yamamoto testified:

> I was pretty sure at some point during that trial or prior to the trial that Ernes-

to was the real shooter. *In my omission to act, that is to do something about it, I think I was—can be categorized as being incompetent . . . .* [Jesus] *never actually expressed to me a desire for me to restrain myself from going after Ernesto, but at the same time I assumed that that's what he wanted. I also assumed that his mother didn't want me to, because I can still see her face when she told me that I'd be trading one for the other, and because of that fact alone, I think again in retrospect, maybe I should have asked to be relieved.*

(Emphasis added). Yamamoto also explained that he did not "aggressively" investigate whether Ernesto was the shooter because he "entertained a strong belief" that Ernesto was going to admit that he was the shooter before or during trial. Yamamoto testified:

> As the trial went on, I would always turn around when someone came in the courtroom thinking that Ernesto was going to say stop this whole, you know, thing, and/or I was going to get a phone call during the course of the trial one evening. . . . That was in the back of my mind. Not that I planned for something like that to happen. . . . [But] I believed it would.

### C. Post-trial

After a jury convicted Jesus of attempted murder, Yamamoto filed a motion for a new trial because "[he] felt that [he] had made a mistake by not going after Ernesto . . . given the results of the verdict." In the motion, Yamamoto included declarations from two witnesses, one of whom saw Ernesto shoot Kidd.[4] The request for a

---

4. The declarations were by Alice Dominguez and Rosa Luis, both of whom testified at the state habeas hearing. Alice Dominguez testi-

fied that she saw Ernesto shoot Kidd and immediately told her friend, Rosa, what she

new trial was denied. Jesus's conviction was affirmed by the California Court of Appeal on April 7, 1993.

Jesus filed a state habeas petition, and was granted an evidentiary hearing before a referee in June 1993. Ernesto took the stand at the state habeas hearing. The statute of limitations for the attempted murder of Kidd had not run when Ernesto testified, and Ernesto was not given any kind of immunity or promises of leniency in exchange for his testimony. Nevertheless, Ernesto admitted that he, not Jesus, was the shooter. Ernesto testified that he was the person with Jesus when Jesus approached the black men and had a friendly conversation. Ernesto testified that after the fight broke out between several Young Crowd gang members and the black men, he chased the men through the baseball field and shot at them two or three times when he was standing in center field.

Several witnesses corroborated Ernesto's testimony. Four witnesses who attended the baby shower testified that they saw Ernesto chase after the black men and shoot at them from the baseball field's outfield. These four witness, and four additional witnesses who attended the baby shower, testified that they saw Jesus near the barbecue area of the park when the shooting occurred. In addition, Denny (Jesus's first lawyer) and Lynn (Denny's investigator) testified that Ernesto confessed to them that he was the shooter about a week after Jesus was arrested. Yamamoto testified that he was "incompetent" because he did not investigate Ernesto's involvement in the shooting despite his belief that Ernesto was the shooter.

saw. Rosa Luis corroborated Alice Dominguez's testimony at the state habeas hearing.

5. Jesus makes three other ineffective assistance of counsel claims in his appeal of the district court's denial of his habeas petition.

Following the state habeas hearing, the referee concluded that Yamamoto provided competent representation and adequately investigated Jesus's case. The California Court of Appeal summarily adopted the referee's report and denied Jesus's petition. The California Supreme Court denied Jesus's petition for review. Jesus then filed a habeas corpus petition in federal district court. A magistrate judge recommended that Jesus's petition be denied. The district court adopted the magistrate judge's recommendation.

In his timely appeal of the district court's denial of his habeas petition, Jesus argues, among other claims,[5] that Yamamoto provided ineffective assistance of counsel because he failed to investigate whether Ernesto was the shooter, and failed to argue that Ernesto was the shooter at trial.

## II.

■ Because Jesus's habeas petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we cannot grant his petition unless the state court's adjudication of his claims

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Because we conclude that Yamamoto provided ineffective assistance of counsel by failing to investigate and argue that Ernesto was the shooter, we do not reach the merits of his other claims.

28 U.S.C. § 2254(d). A state court decision is "contrary to" federal law if it "failed to apply the correct controlling authority from the Supreme Court." *Shackleford v. Hubbard,* 234 F.3d 1072, 1077 (9th Cir. 2000), *cert. denied,* —— U.S. ——, 122 S.Ct. 324, 151 L.Ed.2d 242 (2001); *see also Williams v. Taylor,* 529 U.S. 362, 405–07, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In determining whether a state court decision is contrary to federal law, we look to the state's last reasoned decision—in this case, the referee's report[6]—as the basis for its judgment. *See Ylst v. Nunnemaker,* 501 U.S. 797, 803–04, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991); *Shackleford,* 234 F.3d at 1079 n. 2.

■ The Supreme Court's decision in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), is the controlling Supreme Court authority that governs Jesus's ineffective assistance of counsel claim. To show ineffective assistance of counsel under *Strickland,* Jesus must first show deficient performance: "that counsel's representation fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052. Second, Jesus must show prejudice: "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. Because the referee did not cite any law, much less controlling Supreme Court precedent, and did not apply either prong of *Strickland's* two-factor test in his analysis of Yamamoto's performance, his decision was contrary to federal law. *See Powell v.*

*Galaza,* 282 F.3d 1089, 1095 (9th Cir.2002); *Shackleford,* 234 F.3d at 1077. Accordingly, we may grant Jesus's petition if we find that Yamamoto's performance violated *Strickland.*[7]

■ In the alternative, we could grant Jesus's petition if the state court's adjudication of his claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In order to grant Jesus's habeas petition under Section 2254(d)(2), we must find that the referee's factual findings were "clearly erroneous," such that "we are left with 'a firm conviction' that the determination made by the state court was wrong and that the one [Jesus] urges was correct." *Torres v. Prunty,* 223 F.3d 1103, 1108(9th Cir.2000) (quoting *Van Tran v. Lindsey,* 212 F.3d 1143, 1153–54 (9th Cir.2000)). Because we also find that several of the referee's factual findings are clearly erroneous, we may grant Jesus's petition on this ground, as well.

## A. Deficient Performance

■ It is well established that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland,* 466 U.S. at 691, 104 S.Ct. 2052. Although "[j]udicial scrutiny of counsel's performance must be highly deferential," *id.* at 689, 104 S.Ct. 2052, "we have found counsel to be ineffective where

---

**6.** The referee's report is the last reasoned decision of the state courts because the California Supreme Court denied Jesus's petition for review without comment, and the California Court of Appeal summarily adopted the referee's findings.

**7.** We need not conduct a harmless error review of *Strickland* violations under *Brecht v.*

*Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), because "[t]he *Strickland* prejudice analysis is complete in itself; there is no place for an additional harmless-error review." *Jackson v. Calderon,* 211 F.3d 1148, 1154 n. 2 (9th Cir.2000), *cert. denied.,* 531 U.S. 1072, 121 S.Ct. 764, 148 L.Ed.2d 665 (2001).

he neither conducted a reasonable investigation nor made a showing of strategic reasons for failing to do so," *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir.1994).

■ We have repeatedly found that "[a] lawyer who fails adequately to investigate, and to introduce into evidence, [evidence] that demonstrate[s] his client's factual innocence, or that raise[s] sufficient doubt as to that question to undermine confidence in the verdict, renders deficient performance." *Hart v. Gomez*, 174 F.3d 1067, 1070 (9th Cir.1999) (finding defense counsel's performance deficient because he failed to review or introduce at trial documents corroborating defense witness's testimony); *see also Lord v. Wood*, 184 F.3d 1083, 1096 (9th Cir.1999) (finding defense counsel's performance deficient because he failed to interview or call at trial three witnesses who had told police and investigators that they saw the victim alive a day after the defendant allegedly killed her); *Sanders*, 21 F.3d at 1457(finding defense counsel's performance deficient because he failed to investigate or introduce at trial evidence implicating his client's brother).

■ We find that Yamamoto's performance was deficient because he failed to investigate or introduce at trial evidence that Ernesto was the shooter. The referee found that the "consistent lack of cooperation from immediate witnesses" prevented Yamamoto from discovering and presenting at trial evidence that Ernesto was the shooter. There is, however, clear and convincing evidence that it was Yamamoto's inadequate pre-trial investigation, not witnesses' lack of cooperation, that kept this evidence out of the courtroom at Jesus's trial.

Yamamoto never told Sakamoto that he believed Ernesto was the shooter and never instructed Sakamoto to seek out evidence implicating Ernesto. Accordingly, Sakamoto never conducted this critical investigation. In fact, the referee found that "hardly anything was done" by Sakamoto before Jesus's trial. Sakamoto interviewed only two people before trial: Joanna Espinoza (Jesus's girlfriend) and Blanca Montoya (Ernesto's girlfriend). The remainder of the hours Sakamoto billed as pre-trial investigation were spent interviewing Jesus, reviewing files, driving to the scene of the crime, and attending "attorney conferences."[8] Sakamoto did not speak to Elizabeth Luis or Alfredo Sanchez—two of the witnesses who testified for the defense—until over two weeks after trial began.

Yamamoto conducted no investigation himself and introduced at trial no evidence to support his belief that Ernesto was the shooter. Yamamoto never attempted to contact Ernesto.[9] Yamamoto never questioned Jesus's mother, Christina—who so much as said that Ernesto was the shooter—to find out what she knew. Yamamoto never attempted to gather any information from Denny, Jesus's first lawyer, despite Denny's suggestion that he knew the identity of the shooter. Yamamoto never attempted to interview Kidd, Johnson, or any of their friends to find out what they saw.

In addition, Yamamoto failed to take advantage of several opportunities to identify and interview potential eye witnesses

---

**8.** The referee found that Sakamoto had perpetrated a "fraud on the court" through his excessive billing.

**9.** Over two weeks after trial began, Sakamoto did speak to Ernesto. Sakamoto did not attempt to elicit inculpatory statements from Ernesto during that conversation, presumably because Sakamoto had no reason to suspect that Ernesto was the shooter.

to the shooting. At trial, two of Yamamoto's witnesses, Blanca Montoya and Elizabeth Luis, named several individuals who were at the baby shower—including five of the witnesses who testified at the state habeas hearing. Yamamoto made no attempt to identify or interview any of the people Blanca and Elizabeth named, and has offered no explanation for his failure to find out what these people knew.

 Before trial, Yamamoto was given photographs of people that were taken at the baby shower, but did not attempt to identify any of the potential witnesses in the photographs. Yamamoto never even gave Sakamoto these photographs to use as investigative tools. During the state habeas hearing, Yamamoto explained that he failed to identify these potential witnesses because he thought that some of the people might not make the "best appearance" before a jury, and because his investigator, Sakamoto, told him—without providing any details or written reports—that some witnesses had been uncooperative. That witnesses *might* not cooperate or make the "best appearance" at trial are unreasonable bases not to identify or attempt to interview them, however. "A lawyer has a duty to investigate what information . . . potential eye witnesses possess[ ], even if he later decide[s] not to put them on the stand." *Sanders*, 21 F.3d at 1457 (citation omitted) (brackets in original).

Even when a witness told Yamamoto that she saw who shot Kidd, Yamamoto failed to interview her or call her as a witness at trial. Terri Clark, who attended and helped organize the baby shower, spoke to Yamamoto at the court house.

Yamamoto asked Clark if she had "seen the shooter," and Clark said "yes," but Yamamoto did not ask her the follow-up question that would be on the tip of any reasonable attorney's tongue: "who was the shooter?" Yamamoto subpoenaed Clark to return to court, but never completed his interview and never called her to testify.[10] Yamamoto's failure to fully interview Terri Clark, after she said she knew the identity of the actual shooter cannot be justified as a reasonable trial strategy. *See Lord*, 184 F.3d at 1094(failure to interview witnesses who could have demonstrated defendant's factual innocence constitutes deficient performance); *Sanders*, 21 F.3d at 1456(an attorney's "refusal even to listen to critical information from a key exculpatory witness regarding the basis of his client's most important defense cannot be deemed a permissible strategy").

 The referee concluded that it was a "valid tactic" to rely on Alfredo Sanchez's testimony at trial rather than the testimony of "gang members" because Alfredo was an "independent" witness who did not know Jesus and was not associated with the Young Crowd gang.[11] Yamamoto's decision to rely on Alfredo Sanchez's testimony at trial cannot, however, justify Yamamoto's failure to conduct an adequate investigation—particularly since neither Yamamoto nor Sakamoto spoke to Alfredo until over two weeks after trial began. "[C]ounsel can hardly be said to have made a strategic choice when s/he has not yet obtained the facts on which a decision could be made." *Sanders*, 21 F.3d at 1457.

---

10. This is consistent with Yamamoto's testimony at the state habeas hearing that a witness he interviewed "either told [him] or made a strong inference that [the shooter] was Ernesto." Yamamoto did not record this person's name or call her as a witness at trial.

11. Alfredo testified at trial that he was in a house near the park when he heard shooting. When he looked outside, Alfredo saw Jesus covering two women.

Moreover, had Yamamoto conducted a reasonable investigation, he would have learned that many of the attendees of the baby shower were not gang members. Several witnesses at the state habeas hearing who testified that Ernesto was the shooter and Jesus was in the barbecue area at the time of the shooting were not members of, or otherwise associated with, the Young Crowd gang.

Despite the fact that Jesus never directed Yamamoto to avoid investigating Ernesto's involvement in the shooting, Yamamoto testified that he did not investigate or introduce at trial evidence of Ernesto's guilt because he perceived that it would be "going against the wishes of [Jesus] and his family." This is a patently unreasonable basis not to investigate Ernesto's involvement in the shooting. In *Sanders*, a case that bears striking resemblance to this case, we found that Sanders's trial counsel's performance was deficient because he had reason to believe that Sanders's brother was guilty of the murder Sanders was convicted of committing but did not investigate or introduce at trial evidence of Sanders's brother's guilt. 21 F.3d at 1457. Sanders's attorney explained that he did not conduct this investigation because he " 'didn't see any reason to get [the brother] involved' and felt he was 'representing the family.' " *Id.* at 1455. We held that, "regardless of any sense of obligation by [counsel] to [his client's brother] and/or to [his client's family] . . . [counsel] had no choice but to respect and perform his duty to [his client]." *Id.* at 1455.

In this case, as in *Sanders*, counsel "failed to fulfill his duty to investigate [his client's] most important defense: that [his client's brother] was the shooter." *Id.* at 1457. In light of Yamomoto's belief that Ernesto was the shooter, his failure to investigate or introduce at trial any evidence of Ernesto's involvement in the shooting constitutes deficient performance.

## B. Prejudice

Having established that Yamamoto's performance was deficient, Jesus must also show that he was prejudiced by Yamamoto's deficient performance: that "there is a reasonable probability that, absent [Yamamoto's] errors, the factfinder would have had a reasonable doubt respecting[his] guilt." *Strickland*, 466 U.S. at 695, 104 S.Ct. 2052. A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052.

Because the California state courts never analyzed whether there was a "reasonable probability that, absent[Yamamoto's] errors, the factfinder would have had a reasonable doubt respecting [his] guilt," *id.*, we have conducted "an independent review of the record," *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir.2000). AEDPA requires us to presume that the referee's factual findings are correct; Jesus can only rebut that presumption of correctness with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

The superior court judge who served as referee at the state habeas hearing found not credible the testimony of various witnesses. We do not denigrate the role of the fact-finder in judging credibility when we review the record in hindsight. But as we set forth herein, our review of the record leaves us with a definite and firm conviction that error cognizable under *Strickland's* prejudice prong in fact occurred. Having reviewed the transcripts and exhibits from the trial and state habeas hearing, we conclude that Yamamoto's failure to investigate and present evidence that Ernesto was the shooter prejudiced Jesus because there is a reasonable probability that the outcome of the trial would

have been different had Yamamoto conducted a reasonable investigation and introduced the fruits of that investigation at trial.

### 1. Testimony that Ernesto was the shooter

Four witnesses who were not called as witnesses at Jesus's trial testified at the state habeas hearing that they saw Ernesto shoot at Kidd and his friends.

Terri Clark testified that she witnessed a fight break out between the black men and members of the Young Crowd gang. During the fight, Clark testified that she walked from the barbecue area "towards the fight a little," and was "close" to the fight as it was occurring. Clark then saw the black men begin to run away from the fight, and saw Ernesto running after them. Clark testified that the black men ran through a baseball diamond in the park, and Ernesto chased after the men and shot at them four or five times.[12]

Alice Dominguez, another attendee of the baby shower, was not associated with the Young Crowd gang. Dominguez had previously met Jesus a few times, but had never met Ernesto before the day of the shooting. At the state habeas hearing, Dominguez testified that she saw several black men spray painting a wall in the park and then saw a fight break out between the black men and several members of the Young Crowd gang. Dominguez estimated that she was twenty-five feet away from the fight. Dominguez then saw Ernesto "get up," chase the black guys across the baseball field, and shoot at them about three times. Dominguez testified that she saw one man fall down and then get up and continue running. Immediately after the shooting, Dominguez told her friend, Rosa Luis, that Ernesto was the shooter.[13] Rosa Luis testified at the state habeas hearing that Dominguez did, indeed, identify Ernesto as the shooter.

Marcella Riboni, another attendee of the baby shower, is Jesus's and Ernesto's cousin. Angela Espinoza is Joanna Espinoza's sister. Both women testified at the state habeas hearing that they were standing on top of a picnic bench in the barbecue area when they saw Ernesto shoot Kidd.[14]

12. The referee concluded that Terri Clark's testimony was not credible because she could not have observed the shooting "from the barbecue" area. However, the record reflects clear and convincing evidence to the contrary: Clark was "close" to the fight—not in the barbecue area—when she saw Ernesto shoot at the men. There is no basis in the record to conclude that Clark, standing "close" to the fight, could not have identified Ernesto as the person running after and shooting at the black men.

13. The referee found that Alice Dominguez "had credibility about what she was saying and doing," but ultimately concluded that her testimony was not credible because she could not have seen Kidd fall from where she was standing. However, the record reflects clear and convincing evidence to the contrary: photographs of the park reflect that Wright Road, where Kidd fell, was visible from the west side of the park, where the fight occurred. There is no basis to conclude that Alice Dominguez could not have seen Kidd fall from where she was standing.

14. The referee found Marcella Riboni's and Angela Espinoza's testimony not credible because the shooting occurred "about 600 feet away." There is no basis in the record, however, to conclude that the distance between the picnic benches and the shooting was 600 feet. The diagram of the park relied on at the state habeas hearing was not drawn to scale and does not reflect the distance between the picnic benches and any other area in the park. Moreover, it is undisputed that the shooter began running after the black men at around home plate of the baseball field, which was significantly closer to the barbecue area than where the shooting actually occurred. For both of these reasons, there is no factual basis to conclude that Marcella Riboni

## 2. Testimony that Jesus was not the shooter

Terri Clark, Alice Dominguez, Marcella Riboni, Angela Espinoza, and four additional witnesses who were not called as witnesses at Jesus's trial testified at the state habeas hearing that Jesus was in the barbecue area when the shooting occurred.

Joanna Espinoza, Jesus's girlfriend, testified that she was with Jesus when the shooting occurred. Ramona Juarez, who organized the baby shower and was not associated with the Young Crowd gang, testified that Jesus was about fifteen feet from her, in the barbecue area, when the shooting occurred. Jose Padilla, who is not a Young Crowd gang member, testified that he was cooking on the barbecue when the shooting occurred and saw Jesus about twenty feet away. Ramon Vasquez, a member of the Young Crowd gang, testified that Jesus was about ten feet from him when the shooting occurred.

There is every indication that all eight of these witnesses would have testified at Jesus's trial. The four witnesses who saw Ernesto shoot Kidd testified at the state habeas hearing that they would have offered consistent testimony at trial had they been asked or subpoenaed to testify. Their prior conduct reflects both their willingness to come forward and the consistency of their testimony: Terri Clark told Yamamoto that she saw who shot Kidd; both Angela Espinoza and Marcella Riboni told Lynn (Jesus's first lawyer's investigator) soon after the shooting that they saw Ernesto shoot Kidd; and Alice Dominguez submitted a declaration that Ernesto was the shooter in Yamamoto's motion for a new trial. Each of the four additional witnesses who testified at the state habeas hearing that they saw Jesus in the barbe-

cue area when the shooting occurred also testified that they would have offered consistent testimony at trial had they been asked or subpoenaed to testify at Jesus's trial.

Moreover, there is a reasonable probability that Ernesto would have made an inculpatory statement or testified at trial had Yamamoto adequately investigated this case. Ernesto confessed to Denny and Lynn that he was the shooter when Denny was still representing Jesus. Ernesto again admitted he was the shooter when he testified under oath at the state habeas hearing, despite knowing that he could be prosecuted for attempted murder based on his admission. There is every reason to believe that, had Yamamoto conducted an adequate investigation and confronted Ernesto with declarations from witnesses to the shooting, Ernesto would have, at the very least, made an inculpatory statement that Yamamoto could have used to cross-examine Ernesto at trial.

The prosecution's case was not so strong that, had Yamamoto conducted an adequate investigation, there is no reasonable probability that the result of Jesus's trial would have been different. The prosecution's case rested on Kidd's and Johnson's identification of Jesus, but their testimony was not rock solid. At both the trial and the state habeas hearing, Kidd testified that the shooter was wearing black pants, but Ernesto, not Jesus, was wearing black pants at the baby shower. Kidd testified at the state habeas hearing that he was not certain that Jesus was the shooter. Travon Towner, a friend of Kidd's and Johnson's, testified at the state habeas hearing that he was running behind Kidd and Johnson when Kidd was shot, and that

and Angela Espinoza, standing on a picnic bench in the barbecue area, could not have

identified Ernesto as the shooter.

neither Kidd nor Johnson looked back at the shooter while they were running.

We have held that defendants were prejudiced by trial counsel's failure to investigate and present potentially exculpatory evidence where the prosecution's case was as strong or stronger than the prosecution's case against Jesus. In *Lord,* we found that defense counsel's failure to interview three witnesses who claimed to have seen the victim alive after the time of killing prejudiced the defendant, despite blood and hair evidence that tied Lord to the murder and the testimony of two inmates that Lord had confessed to them. 184 F.3d at 1095–96. In *Brown v. Myers,* 137 F.3d 1154, 1157(9th Cir.1998), we found that defense counsel's failure to investigate or call witness to corroborate Brown's alibi prejudiced Brown, despite the fact that three witnesses testified at trial that they saw Brown shoot the victim. In *Sanders,* we found that defense counsel's failure to interview and call as a witness defendant's brother, who previously confessed to the shooting, prejudiced the defendant despite the fact that five witnesses testified at trial that Sanders was the shooter. 21 F.3d at 1456.

Yamamoto's performance was deficient because he was certain that Jesus was innocent and Ernesto was guilty, and had "at [his] fingertips information that could have undermined the prosecution's case, yet chose not to develop this evidence and use it at trial." *Lord,* 184 F.3d at 1096. Had Yamamoto conducted a reasonable investigation and zealously represented Jesus at trial, four witnesses could have testified that they saw Ernesto shoot Kidd, eleven witnesses could have testified that Jesus was in the barbecue area when the shooting occurred, and Ernesto might have come forward—or at least made an inculpatory statement that could have been used against him at trial. Having consid-

ered the totality of the evidence introduced at trial and at the state habeas hearing, as *Strickland* requires, we conclude that Yamamoto's deficient performance prejudiced Jesus because "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

## CONCLUSION

For the foregoing reasons, we find that Jesus suffered from ineffective assistance of counsel. The district court's order denying Jesus's petition for a writ of habeas corpus is therefore REVERSED. We REMAND to the district court and ORDER that the writ issue unless California retries the defendant within 90 days.