**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

CURTIS CARROLL,

        Petitioner - Appellant,

  v.

GEORGE M. GALAZA,

        Respondent - Appellee.

No. 09-15182

D.C. No. 5:03-cv-01636-JF

MEMORANDUM[*]

Appeal from the United States District Court
for the Northern District of California
Jeremy D. Fogel, District Judge, Presiding

Argued and Submitted December 7, 2010
San Francisco, California

Before: REINHARDT, HAWKINS, and N.R. SMITH, Circuit Judges.

Curtis Carroll petitioned for a writ of habeas corpus claiming that the

prosecutor intentionally discriminated against seven African American potential

jurors in exercising his peremptory strikes. We affirm the district court's denial of

---

     [*]   This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

the writ of habeas corpus because the California Court of Appeal's decision was neither "contrary to, [n]or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The trial court erred in suggesting race-neutral reasons for the prosecutor's use of peremptory challenges, rather than requiring the prosecutor to provide his reasons for the strikes. *See Batson v. Kentucky*, 476 U.S. 79, 97 (1986); *Paulino v. Castro*, 371 F.3d 1083, 1089 (9th Cir. 2004). Furthermore, after hearing the prosecutor's reasons for the strikes, the trial court did not conduct the "sensitive inquiry into [the] circumstantial and direct evidence" that would indicate the genuineness of the prosecutor's stated reasons or show discriminatory intent. *Batson*, 476 U.S. at 93. However, this court does not review the trial court decision, but rather, the last reasoned decision of the state court—in this case, the California Court of Appeal. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002).

The California Court of Appeal's decision reasonably applied Supreme Court law. After noting the trial court's errors, the Court of Appeal inquired into the genuineness of the prosecutor's reasons for the peremptory strikes as *Batson*

2

requires.[1] In so doing, it considered all the circumstances in the case, including inferences from comparative juror analysis and the fact that two African Americans were seated on the jury. *See Ali v. Hickman*, 584 F.3d 1174, 1180 (9th Cir. 2009) (The court should consider the "totality of the relevant facts to decide whether counsel's race-neutral explanation for a peremptory challenge should be believed.") (internal quotation marks and citations omitted); *see also Miller-El v. Dretke*, 545 U.S. 231, 241 (2005) (considering juror comparison a valuable tool in showing purposeful discrimination). The court properly addressed each challenged

---

[1] The dissent puts great emphasis on the trial court's failure to find a prima facie case. The Supreme Court has not addressed a case where the prosecutor stated his reasons for the peremptory challenges, but the trial court did not rule on the genuineness of those reasons. However, the Supreme Court has held that a trial court's failure to find a prima facie case is moot if the trial court proceeds to step two and three, thus creating a record for the appellate court to review. *Hernandez v. New York*, 500 U.S. 352, 359 (1991) (plurality); *see also Stubbs v. Gomez*, 189 F.3d 1099, 1104-05 (9th Cir. 1999). After the prosecutor has stated his reasons on the record, an appellate court may scrutinize the record to determine the genuineness of those reasons. *See Snyder v. Louisiana*, 552 U.S. 472, 477, 485-86 (2008) (determining that the trial court committed clear error in denying a *Batson* challenge). In this case, the trial court did not proceed to step three, but the prosecutor's reasons were in the record for the California Court of Appeal to review. Because deciding the genuineness of those reasons is uniquely and entirely within the court's judgment, it is not unreasonable to consider step one moot, even though no decision was made by the trial court at step three.

3

potential juror, the reasons the prosecutor cited for the challenge,[2] and appellant's arguments that the reason was pretextual. After fully considering each reason, the court concluded that the cited reasons for striking each potential juror were race-neutral, supported by the record, and not evidence of discrimination. Therefore, it found no *Batson* violation.

We hold that the Court of Appeal's careful consideration of the evidence was consistent with Supreme Court precedent. Further, after examining the reasons given for the strikes and the record, we cannot conclude that the Court of Appeal's determination that there was no *Batson* violation "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). State court factual findings are "presumed to be correct," and this presumption has not been rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Hernandez*, 500 U.S. at 364 (The "ultimate question of discriminatory intent represents a finding of fact of

---

[2] Although the prosecutor cited some of the same reasons proffered by the trial judge, his expanded explanation indicates that he was not merely grasping onto the judge's suggestions. In addition, the reasons articulated were of the type that a prosecutor would naturally raise. Therefore, although the judge "beat him to the punch" by offering reasons for the strikes, nothing in the circumstances would indicate that the reasons were any less genuine.

4

the sort accorded great deference on appeal.").  The decision of the district court is

AFFIRMED.

*Carroll v. Galaza*, No. 09-15182

REINHARDT, Circuit Judge, dissenting:

In a recent *Batson* case, the Supreme Court made clear that AEDPA review is "demanding but not insatiable." *Miller-El v. Dretke [Miller-El II]*, 545 U.S. 231, 245 (2005). The California courts committed numerous errors; standing alone, each of these errors constitutes an unreasonable application of clearly established federal law as determined by the Supreme Court. Taken together, as we must, these errors far surpass that standard. In this case, AEDPA "[d]eference does not by definition preclude relief."[1] *Miller-El v. Cockrell [Miller-El I]*, 537 U.S. 322, 340 (2003). I respectfully dissent.

When conducting AEDPA review, we ordinarily review the last reasoned state court judgment, in this case the judgment of the California Court of Appeal. *See Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002). In this case, however, my "analysis will necessarily include discussion of the trial court's decision as well." *Lewis v. Lewis*, 321 F.3d 824, 829 (9th Cir. 2003).

---

[1]AEDPA does not "prohibit a federal court from finding an application of a principle unreasonable when it involves a set of facts different from those of the case in which the principle was announced." *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007). Instead, the Supreme Court has recognized that "even a general standard may be applied in an unreasonable manner." *Id.* Although we must look to Supreme Court case law, "we may look to circuit precedent in determining what law is clearly established." *Byrd v. Lewis*, 566 F.3d 855, 860 n.5 (9th Cir. 2009).

1

I will begin with a brief discussion of the trial court's errors and then proceed to a discussion of the ways in which the Court of Appeal compounded those errors. The trial court erred in two ways that contravene *Batson*. First, it was improper for the trial court to invite the prosecutor to state reasons for the juror strikes unless the court found that the defendant had established a prima facie case. "*Once the defendant makes a prima facie showing*, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors." *Batson v. Kentucky*, 476 U.S. 79, 98 (1986) (emphasis added). *Batson* requires that the prima facie determination be made *before* explanations are considered, *see Fernandez v. Roe*, 286 F.3d 1073, 1079 (9th Cir. 2002), because the defendant's burden at the first step "is a burden of production, not persuasion." *Green v. Lamarque*, 532 F.3d 1028, 1029 (9th Cir. 2008) (citing *Johnson v. California*, 545 U.S. 162, 170-71 (2005)).

The trial court did not find a prima facie case; if it had done so, the prosecutor would have been *required* to state his reasons for the strikes. See *Batson*, 476 U.S. at 98. Apparently, the trial court was convinced by the prosecutor's legally incorrect argument that the presence of African-Americans on

2

the seated jury meant that Carroll *could not* establish a prima facie case.[2] The trial

court responded to the prosecutor's assertions on this point with "well you may be

right" and then asked if any counsel disagreed that two African Americans

remained on the jury. Then the trial court went on to say,

> "I can leave the record as it is and say there is no prima facie case
> based on the fact that there remain two African Americans. I think
> it's more helpful, however, *and you don't have to do it, if you don't
> want to*, Mr. Mifsud [the prosecutor]. I think it's more helpful if you
> were to indicate, first of all, as to whether or not I was correct; or am
> correct. I thought I saw you shaking your head, yes, with respect to
> the first five [jurors]."

(emphasis added).[3]

In explaining that it would be "more helpful," the trial judge was referring to

preserving a record for appeal. A few sentences earlier, in referring to the Court of

Appeal, he said "I don't know how they could decide a situation without some

understanding as to what's taken place and the why's and the wherefore's."

Therefore, the record is clear that the trial court was convinced that there was no

---

[2] In *Miller-El II*, an African-American juror remained on the seated jury and the Supreme Court found not only a prima facie *Batson* violation, but also a *Batson* violation on the merits. 545 U.S. at 240, 266.

[3] The prosecutor then responded "What I will do, your honor, I believe by your statements, you're indicating there is a prima facie case, I will go ahead and justify all eight of the African Americans that were dismissed and the rationale I have for the record to make our record absolutely clear." The trial court did not interject and the prosecutor gave his reasons.

3

prima facie case,[4] and the court was prepared to rule that way regardless of whether the prosecutor offered an explanation or not. The trial court simply invited the prosecutor to confirm the court's reasons in order to assist the Court of Appeal in conducting its appellate review. In *Purkett v. Elem*, 514 U.S. 765, 768 (1995) (per curiam), the Supreme Court held that the state court erred by combining steps two and three of the Batson inquiry; here, the trial court impermissibly combined steps one and two of the inquiry.

Second, even if the trial court had properly moved on to step two, it violated *Batson* when it offered its speculation as to the strikes of some of the jurors. It was improper for the court not to give the defense counsel a true chance to make out a prima facie case before interrupting and speculating as to the prosecutor's reasons for those strikes. *See Paulino v. Castro [Paulino I]*, 371 F.3d 1083, 1089-90 (9th Cir. 2004). It was also improper for the trial court to suggest reasons to the prosecutor because at step two of the *Batson* inquiry "the burden shifts *to the State* to explain adequately the racial exclusion." *Batson*, 476 U.S. at 94 (emphasis added). We addressed a similar situation in *Paulino I*. In *Paulino I*, we noted that

---

[4] This is supported by the fact that when the trial judge denied the motion at the prima facie stage with respect to the first three African-American jurors who were struck, he said "as far as systematic exclusion is concerned, I would note that there remain three African Americans at this time. And maybe we should wait to see what happens further. I would deny the motion."

"[t]he process employed by the trial court to evaluate Paulino's objection *clearly contravened* the procedure outlined in Batson." *Paulino I*, 371 F.3d at 1089 (emphasis added). In *Paulino I*:

> *"*[t]he trial court never permitted defense counsel to explain the basis for his objection in the first instance. Instead, the trial court interrupted defense counsel and offered, sua sponte, its speculation as to why the prosecutor may have struck the five potential jurors in question. But it does not matter that the prosecutor might have had good reasons to strike the prospective jurors. What matters is the real reason they were stricken. The trial court did not pause to *require* an actual explanation from the prosecutor, and only after the trial court had made absolutely clear, for all practical purposes, that it would overrule Paulino's objection did it allow defense counsel an unimpeded opportunity to make the prima facie showing."

*Id.* at 1089-90 (emphasis added).

The Supreme Court in *Johnson* cited approvingly to our decision in *Paulino*, *see* 545 U.S. at 172, and also noted that "[t]he Batson framework is designed to produce actual answers . . . [t]he inherent uncertainty present in inquiries of discriminatory purpose counsels against engaging in needless and imperfect speculation when a direct answer can be obtained by asking a simple question." *Id*. Here, the trial court suggested reasons to the prosecutor and then told the prosecutor that it would be "helpful" if the prosecutor would "indicate" whether the judge was "correct" in his speculative reasons. The trial court explicitly told the prosecutor that he "did not have to" tell the judge whether he was correct. This is far from *requiring*

5

the prosecutor to *state his reasons*; it is inviting the prosecutor, if he wished, to confirm the trial court's speculation, and it is clearly improper under *Batson* because the burden is on the prosecutor to explain the reasons for the strike and the court cannot lessen that burden. As the Supreme Court held in *Miller-El II*, "a prosecutor simply has got to state his reasons as best he can and stand or fall on the plausibility of the reasons he gives." 545 U.S. at 252. Moreover, the trial court cannot offer a reason of his own for the strike, and ask the prosecutor to confirm it, because it is "the prosecutors' burden of stating a racially neutral explanation for their own actions." *Id.* At this stage, the trial court impermissibly collapsed steps two and three of the Batson inquiry.[5] The Supreme Court clearly established in *Purkett v. Elem*, 514 U.S. 765, 768 (1995) (per curiam), that the state court errs when it combines steps two and three of the *Batson* inquiry.

I recognize that, given the tortured *Batson* inquiry committed by the trial court, the Court of Appeal was in a difficult position because the state trial court is best

---

[5] In addition to these two errors, the trial court also disagreed with defense counsel's assertion that one juror improperly struck was enough to constitute a *Batson* violation. The Supreme Court has repeatedly made clear, however, that the strike of a single juror *is* enough to constitute a *Batson* violation. *See, e.g., Snyder v. Louisiana*, 552 U.S. 472, 478 (2008) ("the Constitution forbids striking even a single prospective juror for a discriminatory purpose."). Our court has also held that "the Constitution forbids striking even a single prospective juror for a discriminatory purpose." *United States v. Vasquez-Lopez*, 22 F.3d 900, 902 (9th Cir.1994)

6

situated to conduct a full *Batson* inquiry. *See Lewis*, 321 F.3d at 832. The Court of Appeal erred, however, because it recognized the trial court's errors, but did not –and undoubtedly could not– rectify them.[6] *See id.*

The Court of Appeal's primary error was that in its evaluation of the strikes of jurors Brown, Bekele, and Poindexter-Jackson, it relied exclusively on the reasons originally suggested by the trial court and later adopted by the prosecutor, even though the prosecutor stated additional reasons of his own for each of those jurors. This was error for two reasons. First, it was error because the Court of Appeal did not adequately evaluate the prosecutor's additional reasons for each of those three jurors.

---

[6]The California Court of Appeal, while employing some token comparative juror analysis, relied on an erroneous California Supreme Court decision that had counseled against placing "undue emphasis" on comparative juror analysis. In *Miller-El II*, the Supreme Court relied almost exclusively on a comparative juror analysis in finding a *Batson* violation. 545 U.S. at 241-52. As we held in *Kesser*, "the principles expounded in *Miller-El* were clearly established Supreme Court law for AEDPA purposes" by 1992, if not earlier. *Kesser v. Cambra*, 465 F.3d 351, 360 (9th Cir. 2006) (en banc). A proper step three inquiry treats comparative juror analysis as a "centerpiece of the Batson analysis." *Boyd v. Newland*, 467 F.3d 1139, 1150 (9th Cir. 2006). Moreover, the comparative juror analysis that the Court of Appeal did perform required the defendant to meet a nearly impossible burden–that the struck and seated jurors be essentially identical. For example, the Court found that the record "does not permit a true comparison" of Juror Brown and Juror 3 because, while both had been teachers, it was not clear "what level of education [Brown] taught, or for how long." The Supreme Court has made clear that "[a] per se rule that a defendant cannot win a *Batson* claim unless there is an exactly identical white juror would leave *Batson* inoperable; potential jurors are not products of a set of cookie cutters." *Miller-El II*, 545 U.S. at 247 n.6.

7

A court conducting a proper *Batson* inquiry, however, must evaluate *all* of the prosecutor's reasons because the offering of even one "pretextual explanation naturally gives rise to an inference of discriminatory intent." *Snyder v. Louisiana*, 552 U.S. 472, 485 (2008). As the Supreme Court held in *Snyder*, "[i]n *Miller-El v. Dretke*, the Court made it clear that in considering a *Batson* objection, or in reviewing a ruling claimed to be *Batson* error, *all* of the circumstances that bear upon the issue of racial animosity must be consulted." *Snyder*, 552 U.S. at 478 (internal citations omitted).[7] The prosecutor's reasons lie at the heart of the *Batson* inquiry, and the Court of Appeal's failure to review all of them was contrary to clearly established Supreme Court precedent.

Second, the Court of Appeal's reliance on only these court-suggested reasons was error because, as the Court of Appeal itself recognized, the trial court "*clearly* should not have offered speculative theories as to why the prosecutor might have justifiably sought to exclude the jurors in question: It was for the prosecutor, not the court, to explain his reasons *if* the court determined appellants had made a prima facie case of group bias." (emphases added). But, while the Court of Appeal recognized

---

[7]Indeed, "[a] court need not find all nonracial reasons pretextual in order to find racial discrimination." *Kesser,* 465 F.3d at 360 (emphasis added); *see also Lewis*, 321 F.3d at 831 ("[a]fter analyzing each of the prosecutor's proffered reasons, our precedent suggests that the court should then step back and evaluate *all* of the reasons together.") (emphasis added).

the problem, it also exacerbated it by relying only on those reasons suggested by the judge for the strikes of jurors Brown, Bekele, and Poindexter-Jackson. *Batson* requires a "sensitive inquiry" at step three, and relying on these court-fed reasons alone does not meet this standard. *Batson*, 476 U.S. at 93.

The Court of Appeal erred for another reason distinct from its reliance on the court-suggested reasons; it erroneously found that the trial court had reached step three and that it had ruled on the ultimate question of intentional discrimination.[8] In a proper *Batson* inquiry, the trial court can only "accept" the prosecutor's reasons at step three after the prosecutor gives those reasons at step two; step three is also the only step where the trial judge can rule on the ultimate question of intentional discrimination. Here, however, as discussed above, the trial court never proceeded past step one.[9] Moreover, even if it had, the trial court did not actually conduct the

---

[8]By improperly finding that the trial court had accepted the prosecutor's reasons, the Court of Appeal was able to proceed directly to step three of the *Batson* inquiry. Moreover, this finding allowed it to base its analysis on the reasons that the trial court allegedly accepted and to give some deference to the trial court's assessment.

[9]As discussed earlier, if the trial court did deny the *Batson* motion at step one, as appears reasonably clear, it erred in doing so because the presence of African-Americans on the seated jury does not vitiate a prima facie case, and the burden of proving a prima facie case is merely a burden of production not persuasion. Given that the prosecutor here used his peremptory strikes on eight of the ten or eleven eligible African-American jurors, Carroll clearly had made out a

(continued...)

9

*Batson* third step analysis. We have held that "under clearly established law set forth by the Supreme Court in *Batson*, courts have an *affirmative duty* under the third step of *Batson* to determine whether purposeful discrimination had occurred." *Lewis*, 321 F.3d at 834. "At a minimum, this procedure must include a clear record that the trial court made a deliberate decision on the ultimate question of purposeful discrimination." *United States v. Alanis*, 335 F.3d 965, 968 n.2 (9th Cir. 2003). We have also held that "[t]he trial court must not simply accept the proffered reasons at face value; it has a duty to "evaluate meaningfully the persuasiveness of the prosecutor's [race]-neutral explanation[ ]" to discern whether it is a mere pretext for discrimination." *Williams v. Rhoades*, 354 F.3d 1101, 1108 (9th Cir. 2004), (second and third alterations in original, internal quotation marks omitted). In *Green*, we found that the Court of Appeal had not reached step three when it "merely reiterat[ed] the prosecutor's stated reasons, and then [found] they were race-neutral." 532 F.3d at 1031. Here, the trial court made *no* factual findings of any kind. It did not even say that the defendant had failed to make out a case of purposeful discrimination or make

_____

[9](...continued)
prima facie case. In *Miller-El II*, the Supreme Court found that a similarly striking numerical disparity was even evidence tending to prove purposeful discrimination at step three, 537 U.S. at 340. Given the low burden at the prima facie stage, that evidence was enough, in a consideration of "all relevant circumstances," *see* *Batson*, 476 U.S. at 96, to make out a prima facie case.

10

any pretense of explaining its reasons. After originally saying that it believed there was no prima facie case, the court simply said the following ten words: "[t]he matter being submitted, the motion for mistrial is denied."

The Court of Appeal was aware that the trial court did not explicitly accept the prosecutor's reasons, but sought to avoid that problem by holding, for example, that "the trial court obviously accepted the concern over Melba B.'s physical condition as a valid reason for excusing her, as this was the point upon which the court itself focused in its preliminary remarks concerning this juror." What is left unsaid is critical: the Court of Appeal found that the trial court accepted this reason simply because it had impermissibly suggested it in the first place. The Court treated the situation as if the trial court had accepted the prosecutor's reasons for the strike, rather than vice versa. It also recognized that the trial court's statements signaled to the prosecutor which reasons it would accept as genuine if it ever did reach the third step. As the Court of Appeal admitted, the trial court's "gratuitous assumptions that the prosecutor had satisfactory race-neutral explanations . . . do[] not suggest it entertained the defense motion with the open mind warranted by the situation."

Because I would hold that the California courts unreasonably applied clearly established federal law, I would turn to a *de novo* review of the *Batson* claim. *See Frantz v. Hazey* 533 F.3d. 724, 739 (9th Cir. 2008) (en banc). The majority does not

11

reach the *de novo* step because it finds no error under §2254(d)(1). Accordingly, I will only briefly state that under this *de novo* review, I would conclude that the prosecutor's strikes were "motivated in *substantial part* by race," *see Crittenden v. Ayers*, 624 F.3d 943, 958 (9th Cir. 2010) (emphasis added), and I would therefore find a *Batson* violation at step three.[10]

For the reasons discussed above, I would not rely on the court-suggested reasons for Brown, Poindexter-Jackson, and Bekele. Even if I were to rely on those reasons, I would find that the prosecutor's explanations for striking Brown and Poindexter-Jackson were clearly pretextual. The Oakland courthouse had an elevator and thus an inability to use stairs should not have been a reason to strike a juror. Moreover, Poindexter-Jackson did not ever indicate that she had any problems with stairs. The state barely relies on any of the prosecutor's "secondary" reasons for these three jurors; these "secondary" reasons were the reasons that the prosecutor came up with on his own, and the state was wise not to rely on them because each of them is easily shown to be "make-weight" or completely unsupported by the record.

Moreover, as in *Miller-El,* the numbers are striking. The prosecutor here used his peremptory strikes on eight of the ten or eleven African-American jurors. In

---

[10]As described above, Carroll did make out a prima facie case, and the state does not contest this point. Carroll does not contest, and I agree, that the prosecutor met the low burden of production at step two.

12

*Miller-El I*, the prosecutor struck nine of the ten eligible African-American jurors; and the Court held that "happenstance is unlikely to produce this disparity." 537 U.S. at 340.[11] As a result of the foregoing analysis, I would find that the "strike was motivated in *substantial part* by race," *see Crittenden v. Ayers*, 624 F.3d 943, 958 (9th Cir. 2010) (emphasis added), and I would remand with instructions to grant the writ.[12]

---

[11]It is true that two African-Americans served on the jury. But, that does not end the *Batson* inquiry. The African-American juror who was not struck in *Miller-El I* went on to serve on the jury. 537 U.S. at 331.

[12]Because of the foregoing analysis, I would not reach the question of whether the Court of Appeal's decision was an unreasonable determination of the facts.