**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| GEORGE A. PILOLA, | No. 20-55756 |
| Petitioner-Appellant, | D.C. No. 2:11-cv-06029-DOC-SHK |
| v. | |
| CRAIG KOENIG, Acting Warden, | MEMORANDUM* |
| Respondent-Appellee. | |

Appeal from the United States District Court
for the Central District of California
J. Ross Carter, Magistrate Judge, Presiding

Argued and Submitted January 13, 2022
Pasadena, California

Before: CLIFTON and M. SMITH, Circuit Judges, and S. MURPHY, III,**
District Judge.

George Pilola appeals the district court's order denying his petition for habeas

corpus. We have jurisdiction pursuant to 28 U.S.C. § 2253, and we review the district

court's order de novo, *Hurles v. Ryan*, 752 F.3d 768, 777 (9th Cir. 2014). Applying

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Stephen Joseph Murphy, III, United States District Judge for the Eastern District of Michigan, sitting by designation.

this standard, we affirm. Because the parties are familiar with the facts, we do not recount them here, except as necessary to provide context to our ruling.

Pilola argues that the district court erred by applying deference pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) to the California Supreme Court's decision because the California Supreme Court did not address his claims "on the merits." *See* 28 U.S.C. § 2254(d). We disagree. The California Supreme Court did not provide any reasons for its decision, so we must "look through" that decision to the California Court of Appeal's decision absent some evidence that the California Supreme Court relied on a different ground than the California Court of Appeal. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018); *see also Avila v. Galaza*, 297 F.3d 911, 918 & n.6 (9th Cir. 2002). This is true notwithstanding the fact that the California Supreme Court has held as a matter of state law that its denial of a petition for review does not signal its agreement with the Court of Appeal's decision. *See Wilson*, 138 S. Ct. at 1196; *People v. Davis*, 147 Cal. 346, 350 (1905).[1] Pilola has not provided any evidence to rebut the look-through presumption, so we must look to the California Court of Appeal's decision to determine the California Supreme Court's reasoning. *See Wilson*, 138 S. Ct. at 1195.

The California Court of Appeal held that Pilola "fail[ed] to state sufficient

---

[1] In light of *Davis*, which addresses the import of the California Supreme Court's denial of a petition for review under state law, we deny Pilola's motion for judicial notice (Dkt. 15).

facts demonstrating entitlement to the relief requested," and cited *People v. Duvall*, 9 Cal.4th 464, 474–75 (1995). This explanation leaves open the possibility that the court denied the petition on procedural grounds (*i.e.*, Pilola's allegations were too vague or conclusory) or on the merits (*i.e.*, Pilola's allegations were satisfactory, but they failed to make out the elements of a claim pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), or *Napue v. Illinois*, 360 U.S. 264 (1959)). We must construe ambiguous state court decisions as decisions on the merits "if such a construction is plausible." *Chambers v. McDaniel*, 549 F.3d 1191, 1197 (9th Cir. 2008); *see also Crittenden v. Ayers*, 624 F.3d 943, 959–60 (9th Cir. 2010). Here, the construction is plausible. Therefore, we must construe the California Supreme Court's decision to be on the merits and must apply AEDPA deference.

Because AEDPA deference applies, we cannot grant Pilola's petition unless the California Supreme Court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). This requirement means we may not grant federal habeas relief if a fairminded jurist could agree with the California Supreme Court's decision. *See Harrington v. Richter*, 562 U.S. 86, 101 (2011). When a state court does not provide reasons for its decision, we "must determine what arguments or theories . . . could have supported[] the state court's decision; and then . . . ask whether it is possible fairminded jurists could disagree

3

that those arguments or theories are inconsistent with the holding in a prior decision of [the United States Supreme] Court." *Id.* at 102.

This standard is not satisfied here because a fairminded jurist could conclude that there was no reasonable likelihood that the unmatched fingerprint, the testimony about the lack of prints from Detective Inskeep, and the prosecutor's comments in closing argument could have affected the jury's verdict. *See United States v. Bagley*, 473 U.S. 667, 679 n.9 (1985) (setting forth the materiality standard for a *Napue* claim).[2]

The probative value of the unmatched print is limited. First, the victim—Pilola's then wife—testified that the intruder was wearing gloves, so one would not expect the intruder's fingerprints to have been on the beer bottle. Second, Pilola does not allege that the fingerprint was of sufficiently high quality to match *anyone*. It is possible it came back as "NO MAKE" because it was of such low quality that it could not produce a match, not because it affirmatively did not match Pilola. Third, even if the print conclusively did not match Pilola, it could have been the victim's or a store clerk's, which would not cast doubt on Pilola's involvement.

---

[2] Because a fairminded jurist could conclude that the unmatched print does not satisfy *Napue*'s materiality standard, a fairminded jurist could also conclude that it does not satisfy *Brady*'s more demanding materiality standard. *See Bagley*, 473 U.S. at 682 (setting out *Brady* materiality standard); *Jackson v. Brown*, 513 F.3d 1057, 1076 (9th Cir. 2008) (observing that the materiality standard for a *Brady* claim is more stringent than for a *Napue* claim).

On the other hand, the evidence of Pilola's guilt was strong. The victim testified that she had "no doubts whatsoever" the intruder was her husband because she saw his face in the bathroom, she recognized the way he was talking to her, he had broken down her bedroom door the same way many times before, and when her and Pilola's 18-month-old son came into the hallway crying, the intruder picked him up and was able to quickly comfort him and put him back to sleep the same way Pilola typically did. Further, minutes after enduring a horrific attack, the victim called her oldest son, told him that Pilola had attacked her, and asked him to protect her other children. While it is possible the victim quickly composed herself after the attack and formulated a plot to frame Pilola as she ran to her neighbor's house, it is exceedingly unlikely.

Therefore, considering the record as a whole, a fairminded jurist could conclude that there was no reasonable probability that the unmatched fingerprint, the testimony about the lack of prints from Detective Inskeep, and the prosecutor's comments in closing argument could have affected the jury's verdict. As a result, we must deny Pilola's petition.[3] 28 U.S.C. § 2254(d)(1).

**AFFIRMED.**

---

[3] We deny without prejudice Pilola's motion for an order allowing his expert to examine the beer bottle (Dkt. 25).