**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

TIMOTHY LEE BYRD,
          *Petitioner-Appellant,*

                    v.

GAIL LEWIS, WARDEN, PLEASANT
VALLEY STATE PRISON; EDMUND G.
BROWN, ATTORNEY
GENERAL FOR THE STATE OF
CALIFORNIA,
          *Respondents-Appellees.*

No. 06-15977

D.C. No.
CV-02-02013-MCE

OPINION

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, District Judge, Presiding

Argued October 15, 2007
Submitted May 8, 2009
San Francisco, California

Filed May 15, 2009

Before: J. Clifford Wallace and Johnnie B. Rawlinson,
Circuit Judges, and Jane A. Restani,* Judge.

Opinion by Judge Rawlinson;
Concurrence by Judge Wallace

---

*The Honorable Jane A. Restani, Chief Judge, United States Court of
International Trade, sitting by designation.

## COUNSEL

Krista Hart (briefed and argued), Sacramento, California for the petitioner-appellant.

Edmund G. Brown Jr. (briefed), Dane R. Gillette (briefed), Michael P. Farrell (briefed), Carlos A. Martinez (briefed), and Wanda Hill Rouzan (briefed and argued), Sacramento, California for the respondent-appellee.

## OPINION

RAWLINSON, Circuit Judge:

Timothy Byrd (Byrd) appeals the district court's denial of his 28 U.S.C. § 2254 habeas corpus petition challenging his jury conviction for unlawfully taking a vehicle under Cal. Vehicle Code § 10851(a). We have jurisdiction under 28 U.S.C. §§ 1291 and 2253. We conclude that the state court's application of harmless error review to the trial court's jury instructions was not an unreasonable application of clearly established Supreme Court precedent. Accordingly, we affirm the district court's denial of Byrd's habeas petition.

## I.   FACTS AND PROCEDURAL HISTORY[1]

### A.   The Crime

At noon on June 26, 1999, Lorena Coen (Coen) began drinking at her home. Later that afternoon she drove her 1984 Ford Mustang to Lewey G's bar, where she continued to drink until she became intoxicated. Coen attempted to leave Lewey G's but realized that she was too intoxicated to drive. Instead, Coen decided to park her car one-half block away, across the street from the house of two acquaintances.

---

[1]The facts are taken from the opinion of the California Court of Appeal. *See People v. Byrd*, No. C034582, 2001 WL 1480516, at *1-3 (Cal. Ct. App. Nov. 21, 2001), *as modified on denial of reh'g* (Dec. 20, 2001). The California Court of Appeal's findings of fact are presumed correct "unless [Byrd] can prove otherwise by clear and convincing evidence." *Sanders v. Lamarque*, 357 F.3d 943, 948 (9th Cir. 2004) (citations omitted). We review this case under the "unreasonable application" analysis because the California Court of Appeal referred to the clearly established Supreme Court law of *Sullivan v. Louisiana*, 508 U.S. 275 (1993) *see Byrd*, 2001 WL 1480516, at *10; *see also Gibson v. Ortiz*, 387 F.3d 812, 814 (9th Cir. 2004) (explaining that the "unreasonable application" analysis applies when the state court correctly identifies the governing precedent).

Eugean Allen (Allen), a man Coen had known for years, who is also Byrd's cousin, saw Coen and invited her to a party. Coen continued to drink at the party. During the course of the party, Coen drove between the party and Lewey G's with other people in the car, possibly including Byrd. Coen subsequently called her boyfriend to take her home, but she could not find her keys. She locked her car manually, intending to return for it the following day. However, when Coen's boyfriend returned for the car, he discovered that it was not where Coen had parked it. Coen then reported her car stolen.

A few days later, two California Highway Patrol Officers stopped Byrd. Initially, Byrd falsely identified himself. Upon investigation, the officers discovered that the car Byrd was driving belonged to Coen. A search of the car revealed that the radio had been removed and that the headliner was torn. After being given his *Miranda*[2] warnings, Byrd explained that a girl named "Lorie" loaned him the car.

After retrieving her car, Coen confirmed that the radio had been ripped out and the headliner was gone. She also noted that things she had kept in her car—some clothes, her purse and her son's toys—were missing. Additionally, the car would no longer move in reverse. By the time Coen got home, the car would not move forward either.

## B.    The Trial

Byrd was charged with, among other things, unlawfully driving or taking a vehicle in violation of Cal. Veh. Code § 10851(a). At trial, Coen testified that she did not recall whether she gave her keys to Byrd. However, she explained that she did not believe that she lent Byrd her car for several days because she had never done so before, and needed her car to drive to work.[3] Sandra Coen, Coen's sister-in-law, testi-

---

[2]*Miranda v. Arizona*, 384 U.S. 436 (1966).

[3]"While her car was missing, [Coen] temporarily lost her job." *Byrd*, 2001 WL 1480516, at * 2.

fied that Coen usually did not lend her car to anyone. Allen testified for the defense, recounting that Coen told Byrd that Byrd could have the keys to her car, as she no longer wanted it.

The jury convicted Byrd, and he was sentenced to a prison term of twenty-five years to life.

## C.   Post-Trial Proceedings

The California Court of Appeal affirmed Byrd's conviction. The California Supreme Court summarily denied Byrd's petition for review, after which Byrd filed a federal petition for a writ of habeas corpus. Byrd's case was referred to a Magistrate Judge who recommended denying Byrd's habeas petition. The Magistrate Judge's Findings and Recommendations were fully adopted by the district court. The district court subsequently granted a certificate of appealability on the following issues raised by Byrd on appeal: (1) "[the trial court's] failure to *sua sponte* instruct the jury on mistake of fact," and (2) "the trial court's jury instruction that the jury could find specific intent for vehicle theft based on [Byrd's] retention of the car beyond the scope of consent[.]"

## II.   STANDARD OF REVIEW

We review *de novo* the district court's decision to deny Byrd's habeas petition. *Nguyen v. Garcia*, 477 F.3d 716, 721 (9th Cir. 2007). Because Byrd filed his habeas petition after April 24, 1996, his appeal is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). *See Gill v. Ayers*, 342 F.3d 911, 917 (9th Cir. 2003). Under AEDPA, Byrd's petition can be granted only if the state court determination resolving his claims "was contrary to, or involved an unreasonable application of, clearly established Federal law . . ." or "was based on an unreasonable determination of the facts . . ." 28 U.S.C. § 2254(d). "A state court's decision is contrary to clearly established federal law if it (1) applies a rule that

contradicts the governing law set forth in Supreme Court cases, or (2) confronts a set of facts materially indistinguishable from a Supreme Court decision and nevertheless arrives at a different result." *Gibson*, 387 F.3d at 814 (citations omitted). "A state court's decision is an unreasonable application of clearly established federal law if the state court identifies the correct governing legal principles from Supreme Court decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (citation, alteration and internal quotation marks omitted).

## III.  DISCUSSION[4]

### A.  Mistake-of-Fact Instruction

Byrd contends that because there was evidence demonstrating that Coen gave him permission to drive her car, his due process rights were violated by the trial court's failure to *sua sponte* instruct the jury regarding mistake-of-fact. Accordingly, Byrd argues, the California Court of Appeal's ruling that "substantial evidence supported the [mistake-of-fact] instruction, but . . . the trial court's error in failing to give it was not prejudicial[,]" *Byrd*, 2001 WL 1480516, at * 3, was contrary to clearly established Supreme Court precedent. We disagree.

**[1]** "Failure to instruct on the defense theory of the case is reversible error if the theory is legally sound and evidence in the case makes it applicable." *Beardslee v. Woodford*, 358 F.3d 560, 577 (9th Cir. 2004) (citation omitted).[5] However, to

---

[4]In considering potential state court error, we look to the "last reasoned decision of the state court as the basis of the state court's judgment." *Franklin v. Johnson*, 290 F.3d 1223, 1233 n.3 (9th Cir. 2002) (citation omitted). The California Court of Appeal's decision affirming Byrd's conviction represents the last reasoned state court decision.

[5]Although circuit caselaw is not governing law under AEDPA, we may look to circuit precedent in determining what law is clearly established. *See Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 2000), *as amended*. Moreover, as with any other precedent, we must follow our cases that have determined what law is clearly established. *See Marshall v. Taylor*, 395 F.3d 1058, 1061 and n.15 (9th Cir. 2005).

obtain relief, "[Byrd] must show that the alleged instructional error had substantial and injurious effect or influence in determining the jury's verdict." *Clark v. Brown*, 450 F.3d 898, 905 (9th Cir. 2006), *as amended* (citations and internal quotation marks omitted); *see also Beardslee*, 358 F.3d at 578. A "substantial and injurious effect" means a "reasonable probability" that the jury would have arrived at a different verdict had the instruction been given. *Clark*, 450 F.3d at 916. To decide whether Byrd was prejudiced, we consider: (1) the weight of evidence that contradicts the defense; and (2) whether the defense could have completely absolved the defendant of the charge. *See Beardslee*, 358 F.3d at 578. "The burden on [Byrd] is especially heavy where . . . the alleged error involves the failure to give an instruction." *Clark*, 450 F.3d at 904 (citation and internal quotation marks omitted).

**[2]** Notwithstanding Byrd's innocuous explanations for the facts that he: (1) kept Coen's car for five days; (2) did not attempt to return Coen's car; and (3) removed personal effects from Coen's car, the other evidence overwhelmingly demonstrates that no reasonable juror would have concluded that Byrd actually believed that Coen loaned Byrd her car temporarily or gave it to him. As the California Court of Appeal reasoned:

> [Byrd's] claim that Coen lent him the car is convincingly belied by the following facts: . . . [T]he car radio [was removed from the car] and . . . the interior of the car had been damaged . . . . It is even less likely[ ] that the jury would have thought [Byrd] believed Coen gave him the car permanently. This would have required the jury to conclude that [petitioner] believed a thoroughly intoxicated woman, whom he barely knew, would intentionally give him the gift of a 1984 Ford Mustang containing her personal items including her purse.

*Byrd*, 2001 WL 1480516, at * 6; *see also Beardslee*, 358 F.3d at 578 (concluding that failure to provide a correct mistake-

of-fact jury instruction was not prejudicial where "a significant amount of evidence countered the mistake-of-fact theory."). Accordingly, the California Court of Appeal's ruling regarding failure of the trial court to *sua sponte* instruct the jury on mistake-of-fact was not contrary to or an unreasonable application of clearly established Federal law. We affirm the district court's denial of habeas relief as to this claim.

## B.    Scope-of-Consent Instruction

**[3]** Byrd also challenges the trial court's scope-of-consent instruction, which provided:

> The failure to return a vehicle that was obtained by consent in a timely manner does not by itself establish a violation of section 10851 . . . . You should determine from the circumstances whether the continued use of a vehicle both as to the length of time and the manner clearly and substantially exceeded the scope of the consent given. *If it does not clearly and substantially exceed the scope of the consent given, then the required criminal intent would not be clearly established.*

*Byrd*, 2001 WL 1480516, at * 7 (emphasis added).[6] According to Byrd, this instruction diluted the prosecution's burden of proof, thereby violating his right to due process. The California Court of Appeal agreed, reasoning that because a "clearly established" standard was applied to define the requisite criminal intent, "it is reasonably likely the jury did not find that [Byrd] exceeded Coen's scope of consent beyond a reason-

---

[6]The scope-of-consent instruction was given both orally and in writing. The oral scope-of-consent instruction differed from the written instruction, adding the word "clearly" to modify the criminal intent requirement. However, because Byrd's contention is that the instruction diluted the beyond-a-reasonable doubt standard, the difference in the oral and written instructions is immaterial.

able doubt . . ." *Byrd*, 2001 WL 1480516, at * 10. The California Court of Appeal expressly noted that the scope-of-consent instruction permitted the jury to "conclude[ ] [that Byrd's] 'criminal intent' to keep the car beyond [Coen's] permission need only be 'clearly established' . . . if the jury decided [Byrd] 'clearly and substantially exceeded' the scope of Coen's consent." *Byrd*, 2001 WL 1480516, at * 10. Ultimately, the California Court of Appeal held that "it is reasonably likely the jury did not find that [Byrd] exceeded Coen's scope of consent beyond a reasonable doubt, thus, violating [Byrd's] right to due process of law." *Byrd*, 2001 WL 1480516, at * 10. However, the California Court of Appeal concluded that harmless error analysis was applicable because the instruction was "an error that acknowledges the element, but subjects the element to a lesser burden of proof." *Id.* at * 11.

**[4]** The California Court of Appeal's determination that the jury likely "did not find that [Byrd] exceeded Coen's scope of consent beyond a reasonable doubt," *id.*, was not contrary to or an unreasonable application of governing Supreme Court precedent.[7]

Our esteemed concurring colleague disagrees with the California Court of Appeal's determination. *See* Concurring Opinion, p. 5860. However, with respect, our precedent is clear that, on habeas review, it is not our task to independently analyze the challenged ruling. Rather, we "defer to the state court's ultimate decision." *Musladin v. Lamarque*, 555 F.3d 830, 835 (9th Cir. 2009). "[W]e are bound to presume that state courts know and follow the law, and we have been instructed that state-court decisions be given the benefit of the doubt." *Id.* at 838 n.6 (citation, alteration and internal quotation marks omitted). This direction applies with even greater force when a state court is analyzing a jury instruction devel-

---

[7]The parties do not dispute the fact that the California Court of Appeal found constitutional error.

oped under state law. *See Waddington v. Sarausad*, 129 S. Ct. 823, 833-35 (2009) (emphasizing that this Court must review a state court's resolution of an error in a state-law jury instruction "through the deferential lens of AEDPA"). Our concurring colleague's in-depth *de novo* analysis of the state court's reasoning, *see* Concurring Opinion at pp. 5861-63, strays from the dictates of our deferential habeas review. We are not inclined to follow that path. Indeed, in concluding that the jury instruction rose to the level of constitutional error, the California Appeal followed well-established Supreme Court precedent. *See e.g., Carella v. California*, 491 U.S. 263, 266 (concluding that an instruction that "the jury might have understood . . . as shifting the burden of persuasion [on elements of the offense] . . . was constitutional error"). Instructional error directed toward an element of the offense may rise to the level of a constitutional defect. *See Neder v. United States*, 527 U.S. 1, 9-10 (1999) (noting and citing cases recognizing that improper jury instructions addressing an element of the offense rose to the level of constitutional error).

Having determined that constitutional error occurred, we now consider the challenged instruction in light of the jury instructions "taken as a whole" to determine its effect on the proceedings. *Victor v. Nebraska*, 511 U.S. 1, 5 (1994).

**[5]** It is undisputed that several jury instructions were read that described the beyond-a-reasonable-doubt burden of proof. There has been no argument that these instructions were defective in any way. Therefore, the only question is whether the defective scope-of-consent instruction was of such a nature that the California Court of Appeal committed reversible error when it applied harmless error analysis to the instructional error made by the state trial court.

**[6]** The United States Supreme Court has definitively ruled that a defective reasonable-doubt instruction is not subject to harmless error review. Rather, a jury instruction that relieves the prosecution of its obligation to prove the defendant's guilt

beyond a reasonable doubt constitutes structural error, not subject to harmless error review. *See Sullivan v. Louisiana*, 508 U.S. 275, 281 (1993).

In describing the type of reasonable-doubt instruction that is not amenable to harmless error review, the Court referenced the instruction given by the trial court in *Cage v. Louisiana*, 498 U.S. 39 (1990) (per curiam), *reversed on another ground in Estelle v. McGuire*, 502 U.S. 62, 72 n.4 (1991). *See Sullivan*, 508 U.S. at 277. That instruction stated:

> If you entertain a reasonable doubt as to any fact or element necessary to constitute the defendant's guilt, it is your duty to give him the benefit of that doubt and return a verdict of not guilty. Even where the evidence demonstrates a probability of guilt, if it does not establish such guilt beyond a reasonable doubt, you must acquit the accused. This doubt, however, must be a reasonable one; that is one that is founded upon a real tangible substantial basis and not upon mere caprice and conjecture. *It must be such doubt as would give rise to a grave uncertainty*, raised in your mind by reasons of the unsatisfactory character of the evidence or lack thereof. A reasonable doubt is not a mere possible doubt. *It is an actual substantial doubt*. It is a doubt that a reasonable man can seriously entertain. What is required is not an absolute or mathematical certainty, but a *moral certainty*. *Cage*, 498 U.S. at 40 (citation omitted) (emphases in the original).

Concluding that the instruction was unconstitutional, the Supreme Court explained:

> The charge did at one point instruct that to convict, guilt must be found beyond a reasonable doubt; but it then equated a reasonable doubt with a "grave uncertainty" and an "actual substantial doubt," and

stated that what was required was a "moral certainty" that the defendant was guilty. It is plain to us that the words "substantial" and "grave," as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable-doubt standard. When those statements are then considered with the reference to "moral certainty," rather than evidentiary certainty, it becomes clear that a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause.

*Id.* at 41 (footnote reference omitted).

In explaining why this reasonable-doubt instructional error was not subject to harmless error review, the Supreme Court in *Sullivan* observed that the Sixth Amendment requires a jury verdict of guilt beyond a reasonable doubt. Because "an instruction of the sort" given by the trial courts in *Cage* and in *Sullivan* did not adequately inform the jury of the meaning of reasonable doubt, the resulting verdict necessarily fell short of the constitutional requirement of a finding of guilt beyond a reasonable doubt. *See Sullivan*, 508 U.S. at 278.

**[7]** The Court made a distinction between a defective reasonable-doubt instruction, which is *not* subject to harmless error review, and an error regarding an element of the offense, which *is* subject to harmless error review. *Id*. In making that distinction, the Court gave as an example "[a] mandatory presumption . . . that a person intends the ordinary consequences of his voluntary acts . . ." *Id*. Although such a presumption "violates the Fourteenth Amendment, because it may relieve the State of its burden of proving all elements of the offense," *id*. (citations omitted), the overarching reasonable doubt instruction ensures that the "predicate facts" underlying the presumption are found beyond a reasonable doubt. *Id*. No such assurance exists when the reasonable doubt instruction

itself is constitutionally inadequate to guide the jury's deliberations. In such a circumstance, "the essential connection to a beyond a reasonable doubt factual finding cannot be made," *id*. at 281, because the "misdescription of the burden of proof . . . vitiates *all* the jury's findings." *Id*. (internal quotation marks omitted) (emphasis in the original).

**[8]** The Court expounded on this distinction in *Neder*, when it addressed the effect of the trial court's failure to include in the jury instructions the materiality element of the charged offense of tax fraud. *See id*. at 4, 8. In reaching its conclusion that the omission was subject to harmless error review, the Court emphasized that it had "often applied harmless-error analysis to cases involving improper instructions on a single element of the offense." *Id*. at 9-10 (citations omitted). The Court analogized jury instructions that misdescribe or omit elements to conclusive presumptions, such as those discussed in *Sullivan*, that are subject to harmless error review. *See Neder*, 527 U.S. at 10.

The Court reiterated that the defective overarching reasonable doubt instruction in *Sullivan* was not subject to harmless error analysis "because it vitiate[d] *all* the jury's findings . . ." *id*. at 11 (citation and internal quotation marks omitted). By way of contrast, the instructional error in *Neder* — omission of the materiality element of the tax fraud offense — did not "vitiate *all* the jury's findings." *Id*. (citations, alteration and internal quotation marks omitted). The error prevented the jury from making a finding on the element of materiality rather than preventing the jury from making a finding on the charged crime of tax fraud. *See id*.

Coincidentally, in *Neder* the court discussed *Carella*, a case that is strikingly similar to the facts of this case. *See Neder*, 527 U.S. at 10-12. In *Carella*, 491 U.S. at 264, the defendant was convicted of grand theft when he failed to return a rental car. The following jury instructions were given:

(1)   Presumption Respecting Theft by Fraud:

> Intent to commit theft by fraud is pre-
> sumed if one who has leased or rented the
> personal property of another pursuant to a
> written contract fails to return the personal
> property to its owner within 20 days after
> the owner has made written demand by cer-
> tified or registered mail following the expi-
> ration of the lease or rental agreement for
> return of the property so leased or rented.

(2)   Presumption Respecting Embezzlement of a
Leased or Rented Vehicle:

> Whenever any person who has leased or
> rented a vehicle wilfully and intentionally
> fails to return the vehicle to its owner
> within five days after the lease or rental
> agreement has expired, that person shall be
> presumed to have embezzled the vehicle.

*Id*.

The Court in *Neder* recognized that the jury's conviction of
the defendant in *Carella* was not "a complete verdict because
the conclusive presumption directly foreclosed independent
jury consideration of whether the facts proved established cer-
tain elements of the offenses." *Neder*, 527 U.S. at 12. Never-
theless, harmless error review was applicable because the
guilty verdict did not vitiate the jury's finding of grand theft.
*See id*.

**[9]** Most recently, the Supreme Court addressed the struc-
tural error-harmless error dichotomy in *Hedgpeth v. Pulido*,
129 S. Ct. 530 (2008). The Court re-emphasized the breadth
of trial errors that are subject to harmless error review. *See id*.
at 532 (describing *Neder* and other cases involving omitted

and misstated jury instructions). The Court reinforced the holding in *Neder* that unless *all* the jury's findings are vitiated, harmless error review applies. *See id.* In *Pulido*, the Court left no doubt that its intent in *Neder* was to limit structural error review to those trial deficiencies that negated all the jury's findings, rather than to a preliminary finding that merely contributed to the ultimate determination of guilt. *See id.*

Applying these precepts to the facts of this case leads to the conclusion that the California Court of Appeal's application of harmless error to the challenged jury instruction was not an unreasonable application of Supreme Court precedent.

**[10]** Although the scope-of-consent instruction "subjected [that] element to a lesser burden of proof," *Byrd*, 2001 WL 1480516 at *11, the misstatement regarding that element did not "vitiate *all* the jury's findings." *Neder*, 527 U.S. at 11. Rather, it only prevented the jury from making a complete finding on the scope-of-consent element. The jury's finding on the charged crime of unlawfully taking a vehicle was not vitiated. *See id.*

We recognize that our decision in *Gibson* reaches a different outcome. In *Gibson*, we also addressed a California state court decision, which was before us on appeal of a grant of a writ of habeas corpus. As pertinent to this discussion, Gibson was convicted of forcible oral copulation and anal and genital penetration by foreign object or force or violence (collectively, sexual offenses), against the victim, his spouse. *See Gibson*, 387 F.3d at 817. At the state court trial, evidence of prior uncharged sexual offenses against the victim was admitted. *See id.*[8]

---

[8]Gibson's conviction for corporal injury to a spouse was subject to the admission of similar uncharged acts of domestic violence.

The jury was instructed as follows regarding the reasonable doubt burden of proof:

> Each fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt must be proved beyond a reasonable doubt. In other words, before an inference essential to establish guilt may be found to have been proved beyond a reasonable doubt, each fact or circumstance on which the inference necessarily rests must be proved beyond a reasonable doubt.

*Id*. at 821.

> In deciding whether or not to testify, the defendant may choose to rely on the state of the evidence and upon the failure, if any, of the People to prove beyond a reasonable doubt every essential element of the charge against him. No lack of testimony on defendant's part will make up for a failure of proof by the People so as to support a finding against him on any such essential element.

*Id*. at 821 n.7 (citation and alterations omitted).

> A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether [his] guilty is satisfactorily shown, [he] is entitled to a verdict of not guilty. This presumption places upon the People the burden of proving [him] guilty beyond a reasonable doubt.

*Id*. at 821.

The trial court in *Gibson* instructed the jury as follows regarding the evidence of Gibson's prior uncharged acts:

> If you find that the defendant committed a prior sexual offense, you may, but are not required to,

infer that the defendant had a disposition to commit the same or similar type sexual offenses. If you find that the defendant had this disposition, you may, but are not required to, infer that he was likely to commit and did commit the crime or crimes of which he is accused.

*Id.* at 817.

The jury was further instructed that:

Within the meaning of the preceding instructions, the prosecution has the burden of proving by a preponderance of the evidence that a defendant committed sexual offenses and/or domestic violence other than those for which he is on trial.

You must not consider this evidence for any purpose unless you find a preponderance of the evidence that a defendant committed the other sexual offenses and/or domestic violence.

*Id.* at 818.

In granting relief to Gibson, we concluded that the instructions addressing the prior uncharged acts impermissibly lowered the burden of proof "for the permissive inference" to be drawn from the uncharged acts. *Id.* at 822. We held that the error was structural because the instructions "permitted the jury to find Gibson guilty of the charged sexual offenses by merely a preponderance of the evidence . . ." *Id.* at 825 (citing *Sullivan*, 508 U.S. at 281-82). Further, we found this to be clearly established constitutional law. *See id.*

**[11]** However, *Pulido* instructs that "[a]n instructional error arising in the context of multiple theories of guilt" does not vitiate all the jury's findings. *Pulido*, 129 S.Ct. at 532. The jury could have convicted Gibson on the theory that the infer-

ence from the prior uncharged acts warranted a finding of guilt, or it could have convicted Gibson on the theory that the direct testimony of the victim regarding the charged offenses warranted a finding of guilt, or on some combination of the two theories. The instructional error affected only the theory resting on the inference from the prior uncharged acts. Similarly, in our case, Byrd could have been convicted on the theory that he exceeded the scope of consent, or on the theory that consent was never given. The instructional error affected only the scope-of-consent theory. In such circumstances, *Pulido* dictates the application of harmless error review. *See id.*

**[12]** Although we are reluctant to do so, we must overrule *Gibson* to the extent that it applies structural error review to an instructional error that affects only an element of the offense, a permissible evidentiary inference, or a potential theory of conviction, as opposed to an instructional error that affects the overarching reasonable doubt standard of proof. *See Neder*, 527 U.S. at 10; *see also Pulido*, 129 S.Ct. at 532 (citing *Neder*). Because *Pulido* "undercuts the theory or reasoning" of *Gibson* and the two cannot be reconciled, that portion of the holding in *Gibson* has been effectively overruled by the Supreme Court. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Circ. 2003) (en banc).

Our concurring colleague questions the necessity of addressing our holding in *Gibson*. *See* Concurring Opinion at pp. 5864-65. The concurrence sees

> a principled distinction between the jury instructions at issue in *Gibson* and the instructions at issue here. The erroneous jury instructions in Gibson were not limited to a single element of the crimes charged. Rather, the instructions allowed the jury to find by a preponderance of the evidence that the defendant was guilty of the *entire crime charged* . . .

*Id.* at p. 5864 (emphasis in the original). However, with respect, there is no rational distinction between the challenged jury instruction in this case and the challenged instruction in *Gibson*. In *Gibson*, the jury was instructed that if it found by a preponderance of the evidence that the defendant committed a prior sexual offense, it could use that finding to support an inference that the defendant committed the crime for which he was on trial. *See Gibson*, 387 F.3d at 817. In this case, the jury was instructed that if it determined that the defendant clearly and substantially exceeded the scope of consent given, that fact would establish the offense of unlawfully driving or taking a vehicle in violation of California Vehicle Code § 10851. *See Byrd*, 2001 WL 1480516, at *7. To say that the *Gibson* instruction implicates the ultimate finding of guilt and the *Byrd* instruction does not is analytical hairsplitting that would make our precedent difficult to apply.

**[13]** *Pulido* encompassed within its holding any instructional error that falls short of "categorically 'vitiat[ing] *all* the jury's findings.' " 129 S.Ct. 532 (quoting *Neder*, 527 U.S. at 11) (emphasis in the original). The only instructional error recognized by *Pulido* as vitiating all the jury's findings is a defective overarching reasonable-doubt instruction as articulated in *Sullivan*. *See id*. The jury instruction in *Gibson*, which addressed a finding to support an inference of guilt, was not the equivalent of the overarching reasonable-doubt instruction referenced in *Pulido*, *Neder*, and *Sullivan*. In fact, an overarching reasonable-doubt instruction was given in *Gibson*, *see* 387 F.3d at 821 (reflecting the instruction setting forth the government's burden of proving the defendant guilty beyond a reasonable doubt). Neither the *Gibson* panel nor the parties noted any defect in that instruction. *See id*. By the process of elimination, if the overarching reasonable-doubt instruction in *Gibson* was not defective, *Gibson*'s holding applying structural error review to an instruction of a type other than that identified by the Supreme Court is inconsistent with governing precedent. In short, Supreme Court precedent dictates overruling that portion of *Gibson*, and concluding that the

state court's harmless error review was not an unreasonable application of Federal law.

## IV.   CONCLUSION

Because the trial court's failure to *sua sponte* give a mistake-of-fact instruction did not prejudice Byrd, and the instructional error addressing the scope of consent was properly subjected to harmless error review, we AFFIRM the district court's denial of Byrd's habeas petition.

**AFFIRMED.**

---

WALLACE, Circuit Judge, concurring in the result:

Although I agree with the majority that the district court's order should be affirmed, I write separately to highlight my disagreement in two respects with the majority's decision. First, I do not believe it was reasonably likely that the jury applied the scope-of-consent instruction in an unconstitutional manner, and I would hold that the California Court of Appeal unreasonably applied Supreme Court precedent when it reached the opposite conclusion. Second, I believe it is unnecessary and unwise for this panel to attempt to "overrule" the prior three-judge panel decision in *Gibson v. Ortiz*, 387 F.3d 812 (9th Cir. 2004).

## I.

The Supreme Court has directed that "in reviewing an ambiguous instruction . . . we inquire whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." *Estelle v. McGuire,* 502 U.S. 62, 72 (1991) (internal quotation marks omitted). Indeed, "the proper inquiry is not whether the instruction 'could have' been applied in an unconstitutional

manner, but whether there is a reasonable likelihood that the jury *did* so apply it." *Victor v. Nebraska*, 511 U.S. 1, 6 (1994) *quoting Estelle*, 502 U.S. at 72.

The scope-of-consent jury instruction at issue here was ambiguous. The court of appeal was therefore required, under *Estelle*, to determine whether it was reasonably likely that the jury *applied* the instruction in an unconstitutional manner. The court of appeal held that it was, based on a question posed by the jury during deliberations. The jury asked: "On second element permission, if the permission was initially given, when does permission run out[?]" The trial court responded by directing the jury to the disputed scope-of-consent instruction.

Prior to deliberations, the trial court provided the jury with three clearly-enumerated elements of the charged crime: (1) the taking or driving of a vehicle, (2) without consent, and (3) with specific intent to deprive the owner of title or possession. Thus, when the jury inquired about the "second element" it was referring specifically to the element of consent.

To understand why it was unreasonable for the court of appeal to conclude that the jury unconstitutionally applied the instruction, it is important to review the court of appeal's textual interpretation of the instruction. The court of appeal analyzed the last two sentences of the instruction independently. With respect to the first, it held that the instruction imposed a higher burden of proof than necessary on the *consent* element, and therefore the "instructional shortcoming was to defendant's benefit and it is not error as to him." *People v. Byrd*, No. C034582, 2001 WL 1480516, at *9 (Cal. Ct. App. Nov. 21, 2001), *as modified on denial of reh'g* (Dec. 20, 2001). Therefore, because the jury asked specifically about the "second element" of consent, under the court of appeal's own analysis, the instruction the jury received was free from constitutional error.

It was only with respect to the final sentence of the instruc-
tion that the court of appeal found constitutional error. That
sentence involved the interplay between the elements of con-
sent and intent: "If [the use of the vehicle] does not clearly
and substantially exceed the scope of the consent given, then
the required criminal intent would not be clearly established."
The court of appeal held that, once the word "not" was
removed from the sentence, the instruction impermissibly
allowed the jury to find intent based solely on a finding of
consent. *Id.* at *9-10. Furthermore, the court of appeal held
that the jury might make such a finding at a burden lower than
beyond a reasonable doubt. *Id.* at *10. All of these concerns,
however, dealt with the element of *intent*. Had the jury
requested clarification on the "third element," and been
directed to the disputed instruction, it would have been rea-
sonable for the court of appeal to conclude the jury had
applied it in an unconstitutional manner. However, because
the jury only inquired about consent, then under the logic of
the court of appeal's own interpretation, no constitutional
concerns were directly implicated.

The court of appeal offers only one hypothetical situation
that could potentially explain how the jury, concerned only
with the "second element," would have nonetheless applied
an unconstitutionally lowered burden of proof. The court rea-
soned:

> Upon consideration of [the consent element], the
> jury may have decided that Coen initially gave
> defendant permission to take her car for the evening,
> at which point it would have turned to the court's
> instruction on the effect of Coen's consent . . . on the
> second element of the offense.[1] So doing, it may
> have concluded defendant's "criminal intent" to keep
> the car beyond the owner's permission need only be

---

[1]Although the court uses the term "second element" it appears to be
referring to the third element of intent.

> "clearly established" and that it could be "clearly established," if the jury decided defendant "clearly and substantially exceeded" the scope of Coen's consent. Thus, we conclude it is reasonably likely the jury did not find that defendant exceeded Coen's scope of consent beyond a reasonable doubt, thus, violating defendant's right to due process of law.

*Byrd*, 2001 WL 1480516, at *10. Under this reasoning, to the extent I can understand it, the jury would have been required, initially, to read out the word "not" from the instructions. It would have then needed to consider how the element of consent affected the element of intent. Finally, the jury would have been required to import a lower standard of proof from the intent element when making its consent determination. I do not believe it was reasonably likely that a jury would engage in such tortured analysis.

The majority faults my analysis of the court of appeal's reasoning as improperly performing an "in-depth *de novo*" review of the state appellate court's decision. However, a careful reading of the concurrence shows that is not what I did. On habeas review, we are authorized to determine whether a state court's application of United States Supreme Court precedent was "objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 408-10 (2000). Here, the court of appeal's convoluted parsing of the scope-of-consent instruction clearly represents such an "objectively unreasonable" application of Supreme Court law. *See e.g.*, *Johnson v. Texas*, 509 U.S. 350, 368 (1993) ("[W]e do not engage in a technical parsing of . . . the instructions, but instead approach the instructions in the same way that the jury would — with a 'commonsense understanding of the instructions in the light of all that has taken place at the trial' "), quoting *Boyde v. California*, 494 U.S. 370, 381 (1990).

## II.

Under my reasoning, that should have ended the case. Instead, the majority goes on to hold that the court of appeal

reasonably applied established Supreme Court law when it reviewed the disputed jury instruction for harmless error. As argued above, I do not believe it is reasonably likely that the jury actually applied the instructions in an unconstitutional manner, so I would affirm without reaching this harmless error issue. However, having decided to address the propriety of applying harmless error review in this case, the majority also "reluctant[ly]" decides to "overrule" the prior three-judge panel decision in *Gibson*. This decision to attempt to "overrule" *Gibson* is both unnecessary and unwise. Therefore, I depart from the majority's analysis of this issue.

The majority sees the need to "overrule" *Gibson* because it assumes that *Gibson* controls the outcome of this case. However, there is a principled distinction between the jury instructions at issue in *Gibson* and the instructions at issue here. The erroneous jury instructions in *Gibson* were not limited to a single element of the crimes charged. Rather, the instructions allowed the jury to find by a preponderance of the evidence that the defendant was guilty of the *entire crime charged*, requiring, the court held, structural error review. 387 F.3d at 824-25 (holding that the instruction was structural error because it "permitted the jury to find Gibson guilty of the charged sexual offenses by merely a preponderance of the evidence"). In this case, the alleged erroneous instruction allowed the jury, at most, to test only the element of consent at a lower burden. This is not "analytical hairsplitting," as the majority apparently believes, but a reasoned and logical reading of the respective instructions at issue. *Gibson* therefore does not compel the application of structural error review here, so we need not attempt to "overrule" it to reach the correct result.

For similar reasons, it is also unnecessary for us to "overrule" *Gibson* "to the extent that it applies structural error review to an instructional error that affects only . . . a potential theory of conviction," where multiple theories of guilt are asserted. *Gibson* held that, "[w]hen a court gives the jury

instructions that allow it to convict a defendant on an impermissible legal theory, as well as a theory that meets constitutional requirements, 'the unconstitutionality of any of the theories requires that the conviction be set aside.' " *Id.* at 825, *quoting Boyde v. California*, 494 U.S. 370, 379-80 (1990). However, in this case, the alleged instructional error did not give the jury the option of convicting Byrd on an impermissible legal theory. Rather, as discussed above, at most, the challenged instruction allowed the jury to find *one element* of the charged crime pursuant to a lower burden of proof. Therefore, we need not attempt to "overrule" *Gibson*'s holding with respect to the use of structural error in multiple theories cases in order to conclude that harmless error review is applicable here. Whether *Gibson* now stands at odds with Supreme Court precedent with respect to its multiple theories holding is an issue that can be addressed in the future when *Gibson*'s holding is properly before us.