**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

NOV 29 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



| | |
|---|---|
| STEVEN DIAZ,<br><br>               Petitioner - Appellant,<br><br>  v.<br><br>KEN CLARK,<br><br>               Respondent - Appellee, | No. 08-15808<br><br>D.C. No. 2:05-CV-00376-MCE-CMK<br><br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, District Judge, Presiding

Argued and Submitted July 16, 2010
San Francisco, California

Before: HUG and M. SMITH, Circuit Judges, and TODD, Senior District Judge.**

Steven Diaz ("petitioner"), a California state prisoner, appeals the district

court's denial of his 28 U.S.C. § 2254 habeas petition challenging his convictions

for rape (Cal. Penal Code § 261), kidnapping with intent to commit rape (Cal.

---

\*     This disposition is not appropriate for publication and is not precedent except as provided by 9th Circuit Rule 36-3.

\*\*     The Honorable James Dale Todd, Senior United States District Judge for the Western District of Tennessee, sitting by designation.

Penal Code § 208), kidnapping (Cal. Penal Code § 207), and false imprisonment (Cal. Penal Code § 236). We have jurisdiction under 28 U.S.C. § 2253. We review de novo the denial of a habeas petition. *Tanner v. McDaniel*, 493 F.3d 1135, 1139 (9th Cir. 2007). Because the petition was filed after April 24, 1996, we review it under the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA, we may grant the petition if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Byrd v. Lewis*, 566 F.3d 855, 859 (9th Cir. 2009). We reverse and remand to the district court.

Petitioner argues that his trial counsel was ineffective for failing to test DNA evidence taken from the victim after the assault. To establish ineffective assistance of counsel under the Sixth Amendment, a petitioner must satisfy a two-part test. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, a petitioner must show his counsel's performance was deficient. *Id.* To establish deficient performance, a petitioner must show that his attorney's conduct "fell below an objective standard of reasonableness" based on prevailing legal norms at that time. *Id.* at 688. Second, a petitioner must show that his attorney's deficient performance

2

prejudiced his case. *Strickland*, 466 U.S. at 687. To show prejudice, a petitioner must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is more likely than not to have influenced the outcome, *i.e.*, it is a probability sufficient to undermine confidence in the outcome. *Id*. at 693-94.

In this case, the California Supreme Court's denial of petitioner's ineffective assistance of counsel claim was an unreasonable application of clearly established Supreme Court law. An attorney has a duty to carry out reasonable investigations before he selects a trial strategy. *Strickland*, 466 U.S. at 691; *Wiggins v. Smith*, 539 U.S. 510, 521-22 (2003); *Richter v. Hickman*, 578 F.3d 944, 955 (9th Cir. 2009). An attorney must conduct an investigation for a case that is sufficient to allow him to make an informed decision about whether certain tests in that case are necessary. *Richter*, 578 F.3d at 955. "[D]ecisions that are made before a complete investigation is conducted are reasonable only if the level of investigation was also reasonable." *Duncan v. Ornoski*, 528 F.3d 1222, 1234 (9th Cir. 2008). While an attorney's strategic choice made after a thorough investigation is almost unchallengable, a strategic choice made after an incomplete investigation is reasonable only "to the extent that reasonable professional judgments support the

3

limitations on investigation." *Strickland*, 466 U.S. at 690-91. A "particular decision not to investigate must be directly assessed for reasonableness in all the circumstances." *Id*. at 691.

Here, trial counsel's performance was deficient because his failure to test the DNA evidence constitutes a failure to carry out reasonable investigations before selecting a trial strategy. Petitioner's counsel, Jon Lippsmeyer, failed to test the DNA evidence gathered from the victim and chose to assert a defense of consent. Lippsmeyer did not conduct a reasonable investigation, which would have included testing the DNA evidence, before considering other possible defenses. Lippsmeyer knew petitioner denied having sex with the victim because petitioner had stated that the victim had a yellow mucus on her vagina and that he did not want to have sex with her and contract a disease. Evidence showed the victim had chlamydia. Also, Lippsmeyer knew that the victim had been found with several condoms in her purse in an area known to host prostitutes. Given that petitioner adamantly insisted that he did not have sex with the victim, and other evidence supported this assertion, it was unreasonable for Lippsmeyer to fail to test the DNA evidence before determining trial strategy. A thorough investigation of plausible options would have undoubtedly required a DNA test, especially where the petitioner insisted that he did not have sex with the victim. There was no reason not conduct

4

the DNA test, the testing was widely used at the time, and Lippsmeyer had no explanation for his failure to test the evidence. Thus, the failure to test the DNA evidence prior to determining trial strategy constitutes deficient performance. *See id.* at 687; *Wiggins*, 539 U.S. at 524-26.

Trial counsel's deficient performance in failing to test the DNA evidence also prejudiced petitioner's case. Given the strength of evidence supporting petitioner's version of events, there is a reasonable probability that conducting the DNA test would have produced a different result at trial. Petitioner stated that he engaged in a financial agreement to have sex with the victim, but later refused because he saw that she had a venereal disease. Evidence supported this assertion because the victim was found with several condoms in her purse and engaged contact with the petitioner in an area known for prostitution. The victim also had a venereal disease, as petitioner had insisted. If a DNA test had been conducted, it could have supported petitioner's testimony that he did not have sex with the victim and that the semen on the victim came from another source. Thus, the likelihood that DNA testing would have changed the result is "sufficient to undermine confidence in the outcome." *See Strickland*, 466 U.S. at 694; *Wiggins*, 539 U.S. at 536.

5

The dissent contends that petitioner's counsel would have been ethically barred from presenting the consent defense if the DNA was in fact petitioner's. However, counsel could have still relied on a consent defense–that the sexual contact was consensual–even if it were the petitioner's DNA. The record contained testimony that petitioner initially agreed to pay the alleged victim for sex. Thus, the consent defense would have remained viable even if the DNA belonged to the petitioner.

Based on the foregoing, we hold that the California Supreme Court's denial of petitioner's habeas petition was an unreasonable application of Supreme Court law. We therefore reverse and remand to the district court with instructions to grant the writ of habeas corpus.

**REVERSED and REMANDED**.

*Diaz v. Clark*, No. 08-15808

Todd, District Judge, Dissenting:

I respectfully dissent. The majority holds that trial counsel's performance was deficient because his failure to obtain a test of DNA evidence prejudiced petitioner's case since there is a reasonable probability that conducting a DNA test would have produced a different result at trial. That conclusion is not supported by the evidence for several reasons.

First, the absence of petitioner's DNA in the vaginal swabs taken from the alleged victim would have had no effect on the verdict. Petitioner denied that he ever penetrated the alleged victim's vagina during the incident. The alleged victim testified that she did not remember whether petitioner ejaculated during the incident. Therefore, the absence of petitioner's DNA in the testing sample would have added nothing to the evidence upon which the jury had to make its credibility determination.

Second, a test which showed the presence of petitioner's DNA in the vaginal sample would have had a significant detrimental impact upon petitioner's position at trial. Petitioner relied upon a consent defense, contending that the alleged victim was a prostitute and that he abandoned his sexual activity when he discovered that the alleged victim had a venereal disease. Defendant denied that he penetrated the victim and denied that he ejaculated during the incident. If petitioner's DNA had

been found in the tested vaginal fluids, his defense lawyer would have been unable to present or argue the facts upon which petitioner relied as his only defense. While defense counsel would not have been required to disclose a positive DNA test to the prosecutor, *see* Fed. R. Crim. P. 16(b)(1)(B), defense counsel would have been ethically precluded from presenting facts at trial that he knew to be untrue. *See People v. Riel*, 998 P.2d 969, 1013-14 (Cal. 2000) (counsel "may not present evidence they know to be false or assist in perpetrating known frauds on the court").

Third, it would be speculation to conclude that there is a reasonable probability that a DNA test would have produced a different result. The jury was presented with two completely different versions of the facts of this incident–forcible rape versus consensual sexual contact abandoned before penetration. A DNA test which was negative for defendant's DNA would have added nothing to those diametrically opposed versions and would not have affected the result. A DNA test which was positive for defendant's DNA would have contradicted his testimony that he did not penetrate and ejaculate into the victim.

The district court's determination that trial counsel's failure to obtain DNA testing resulted in no prejudice to petitioner was not contrary to, or an unreasonable application of, clearly established federal law, *see Byrd v. Lewis*, 566 F.3d 855, 859 (9th Cir. 2009). Therefore, I would affirm.