REINHARDT, Circuit Judge,
dissenting:
In a recent Batson case, the Supreme Court made clear that AEDPA review is “demanding but not insatiable.” Miller-El v. Dretke [Miller-El II], 545 U.S. 231, 245, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005). The California courts committed numerous errors; standing alone, each of these errors constitutes an unreasonable application of clearly established federal law as determined by the Supreme Court. Taken together, as we must, these errors far surpass that standard. In this case, AEDPA “[d]eference does not by definition preclude relief.”[1] Miller-El v. Cock-rell [Miller-El I], 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). I respectfully dissent.
When conducting AEDPA review, we ordinarily review the last reasoned state court judgment, in this case the judgment of the California Court of Appeal. See Avila v. Galaza, 297 F.3d 911, 918 (9th Cir.2002). In this case, however, my “analysis will necessarily include discussion of the trial court’s decision as well.” Lewis v. Lewis, 321 F.3d 824, 829 (9th Cir.2003).
I will begin with a brief discussion of the trial court’s errors and then proceed to a discussion of the ways in which the Court of Appeal compounded those errors. The trial court erred in two ways that contravene Batson. First, it was improper for the trial court to invite the prosecutor to state reasons for the juror strikes unless the court found that the defendant had established a prima facie case. “Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors.” Batson v. Kentucky, 476 U.S. 79, 98, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (emphasis added). Bat-son requires that the prima facie determination be made before explanations are considered, see Fernandez v. Roe, 286 F.3d 1073, 1079 (9th Cir.2002), because the defendant’s burden at the first step “is a burden of production, not persuasion.” Green v. LaMarque, 532 F.3d 1028, 1029 (9th Cir.2008) (citing Johnson v. California, 545 U.S. 162, 170-71, 125 S.Ct. 2410, 162 L.Ed.2d 129 (2005)).
*68 The trial court did not find a prima facie case; if it had done so, the prosecutor would have been required to state his reasons for the strikes. See Batson, 476 U.S. at 98, 106 S.Ct. 1712. Apparently, the trial court was convinced by the prosecutor’s legally incorrect argument that the presence of African-Americans on the seated jury meant that Carroll could not establish a prima facie case.[2] The trial court responded to the prosecutor’s assertions on this point with “well you may be right” and then asked if any counsel disagreed that two African Americans remained on the jury. Then the trial court went on to say,
“I can leave the record as it is and say there is no prima facie case based on the fact that there remain two African Americans. I think it’s more helpful, however, and you don’t have to do it, if you don’t want to, Mr. Mifsud [the prosecutor]. I think it’s more helpful if you were to indicate, first of all, as to whether or not I was correct; or am correct. I thought I saw you shaking your head, yes, with respect to the first five [jurors].”
(emphasis added).[3]
In explaining that it would be “more helpful,” the trial judge was referring to preserving a record for appeal. A few sentences earlier, in referring to the Court of Appeal, he said “I don’t know how they could decide a situation without some understanding as to what’s taken place and the why’s and the wherefore’s.” Therefore, the record is clear that the trial court was convinced that there was no prima facie case,[4] and the court was prepared to rule that way regardless of whether the prosecutor offered an explanation or not. The trial court simply invited the prosecutor to confirm the court’s reasons in order to assist the Court of Appeal in conducting its appellate review. In Purkett v. Elem, 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam), the Supreme Court held that the state court erred by combining steps two and three of the Batson inquiry; here, the trial court impermissibly combined steps one and two of the inquiry.
Second, even if the trial court had properly moved on to step two, it violated Batson when it offered its speculation as to the strikes of some of the jurors. It was improper for the court not to give the defense counsel a true chance to make out a prima facie case before interrupting and speculating as to the prosecutor’s reasons for those strikes. See Paulino v. Castro [Paulino I], 371 F.3d 1083, 1089-90 (9th Cir.2004). It was also improper for the trial court to suggest reasons to the prosecutor because at step two of the Batson inquiry “the burden shifts to the State to explain adequately the racial exclusion.” Batson, 476 U.S. at 94, 106 S.Ct. 1712 (emphasis added). We addressed a similar situation in Paulino I. In Paulino I, we *69 noted that “[t]he process employed by the trial court to evaluate Paulino’s objection dearly contravened the procedure outlined in Batson.” Paulino I, 371 F.3d at 1089 (emphasis added). In Paulino I:
“[t]he trial court never permitted defense counsel to explain the basis for his objection in the first instance. Instead, the trial court interrupted defense counsel and offered, sua sponte, its speculation as to why the prosecutor may have struck the five potential jurors in question. But it does not matter that the prosecutor might have had good reasons to strike the prospective jurors. What matters is the real reason they were stricken. The trial court did not pause to require an actual explanation from the prosecutor, and only after the trial court had made absolutely clear, for all practical purposes, that it would overrule Paulino’s objection did it allow defense counsel an unimpeded opportunity to make the prima facie showing.”
Id. at 1089-90 (emphasis added).
The Supreme Court in Johnson cited approvingly to our decision in Patdino, see 545 U.S. at 172, 125 S.Ct. 2410, and also noted that “[t]he Batson framework is designed to produce actual answers ... [t]he inherent uncertainty present in inquiries of discriminatory purpose counsels against engaging in needless and imperfect speculation when a direct answer can be obtained by asking a simple question.” Id. Here, the trial court suggested reasons to the prosecutor and then told the prosecutor that it would be “helpful” if the prosecutor would “indicate” whether the judge was “correct” in his speculative reasons. The trial court explicitly told the prosecutor that he “did not have to” tell the judge whether he was correct. This is far from requiring the prosecutor to state his reasons; it is inviting the prosecutor, if he wished, to confirm the trial court’s speculation, and it is clearly improper under Bat-son because the burden is on the prosecutor to explain the reasons for the strike and the court cannot lessen that burden. As the Supreme Court held in Miller-El II, “a prosecutor simply has got to state his reasons as best he can and stand or fall on the plausibility of the reasons he gives.” 545 U.S. at 252, 125 S.Ct. 2317. Moreover, the trial court cannot offer a reason of his own for the strike, and ask the prosecutor to confirm it, because it is “the prosecutors’ burden of stating a racially neutral explanation for their own actions.” Id. At this stage, the trial court impermissibly collapsed steps two and three of the Bat-son inquiry.[5] The Supreme Court clearly established in Purkett v. Elem, 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam), that the state court errs when it combines steps two and three of the Batson inquiry.
I recognize that, given the tortured Bat-son inquiry committed by the trial court, the Court of Appeal was in a difficult position because the state trial court is best situated to conduct a full Batson inquiry. See Lewis, 321 F.3d at 832. The Court of Appeal erred, however, because it recognized the trial court’s errors, but did not — and undoubtedly could not — rectify *70 them.[6] See id.
The Court of Appeal’s primary error was that in its evaluation of the strikes of jurors Brown, Bekele, and Poindexter-Jackson, it relied exclusively on the reasons originally suggested by the trial court and later adopted by the prosecutor, even though the prosecutor stated additional reasons of his own for each of those jurors. This was error for two reasons. First, it was error because the Court of Appeal did not adequately evaluate the prosecutor’s additional reasons for each of those three jurors. A court conducting a proper Bat-son inquiry, however, must evaluate all of the prosecutor’s reasons because the offering of even one “pretextual explanation naturally gives rise to an inference of discriminatory intent.” Snyder v. Louisiana, 552 U.S. 472, 485, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008). As the Supreme Court held in Snyder, “[i]n Miller-El v. Dretke, the Court made it clear that in considering a Batson objection, or in reviewing a ruling claimed to be Batson error, all of the circumstances that bear upon the issue of racial animosity must be consulted.” Snyder, 552 U.S. at 478, 128 S.Ct. 1203 (internal citations omitted).[7] The prosecutor’s reasons lie at the heart of the Batson inquiry, and the Court of Appeal’s failure to review all of them was contrary to clearly established Supreme Court precedent.
Second, the Court of Appeal’s reliance on only these court-suggested reasons was error because, as the Court of Appeal itself recognized, the trial court “clearly should not have offered speculative theories as to why the prosecutor might have justifiably sought to exclude the jurors in question: It was for the prosecutor, not the court, to explain his reasons if the court determined appellants had made a prima facie case of group bias.” (emphases added). But, while the Court of Appeal recognized the problem, it also exacerbated it by relying only on those reasons suggested by the judge for the strikes of jurors Brown, Bekele, and Poindexter-Jackson. Batson requires a “sensitive inquiry” at step three, and relying on these court-fed reasons alone does not meet this *71 standard. Batson, 476 U.S. at 93, 106 S.Ct. 1712.
The Court of Appeal erred for another reason distinct from its reliance on the court-suggested reasons; it erroneously found that the trial court had reached step three and that it had ruled on the ultimate question of intentional discrimination.[8] In a proper Batson inquiry, the trial court can only “accept” the prosecutor’s reasons at step three after the prosecutor gives those reasons at step two; step three is also the only step where the trial judge can rule on the ultimate question of intentional discrimination. Here, however, as discussed above, the trial court never proceeded past step one.[9] Moreover, even if it had, the trial court did not actually conduct the Batson third step analysis. We have held that “under clearly established law set forth by the Supreme Court in Batson, courts have an affirmative duty under the third step of Batson to determine whether purposeful discrimination had occurred.” Lewis, 321 F.3d at 834. “At a minimum, this procedure must include a clear record that the trial court made a deliberate decision on the ultimate question of purposeful discrimination.” United States v. Alanis, 335 F.3d 965, 968 n. 2 (9th Cir.2003). We have also held that “[t]he trial court must not simply accept the proffered reasons at face value; it has a duty to “evaluate meaningfully the persuasiveness of the prosecutor’s [race]-neutral explanationf ]” to discern whether it is a mere pretext for discrimination.” Williams v. Rhoades, 354 F.3d 1101, 1108 (9th Cir.2004), (second and third alterations in original, internal quotation marks omitted). In Green, we found that the Court of Appeal had not reached step three when it “merely reiterat[ed] the prosecutor’s stated reasons, and then [found] they were race-neutral.” 532 F.3d at 1031. Here, the trial court made no factual findings of any kind. It did not even say that the defendant had failed to make out a case of purposeful discrimination or make any pretense of explaining its reasons. After originally saying that it believed there was no prima facie case, the court simply said the following ten words: “[t]he matter being submitted, the motion for mistrial is denied.”
The Court of Appeal was aware that the trial court did not explicitly accept the prosecutor’s reasons, but sought to avoid that problem by holding, for example, that “the trial court obviously accepted the concern over Melba B.’s physical condition as a valid reason for excusing her, as this was the point upon which the court itself focused in its preliminary remarks concerning this juror.” What is left unsaid is critical: the Court of Appeal found that *72 the trial court accepted this reason simply because it had impermissibly suggested it in the first place. The Court treated the situation as if the trial court had accepted the prosecutor’s reasons for the strike, rather than vice versa. It also recognized that the trial court’s statements signaled to the prosecutor which reasons it would accept as genuine if it ever did reach the third step. As the Court of Appeal admitted, the trial court’s “gratuitous assumptions that the prosecutor had satisfactory race-neutral explanations ... do[ ] not suggest it entertained the defense motion with the open mind warranted by the situation.”
Because I would hold that the California courts uni'easonably applied clearly established federal law, I would turn to a de novo review of the Batson claim. See Frantz v. Hazey, 533 F.3d 724, 739 (9th Cir.2008) (en banc). The majority does not reach the de novo step because it finds no error under § 2254(d)(1). Accordingly, I will only briefly state that under this de novo review, I would conclude that the prosecutor’s strikes were “motivated in substantial part by race,” see Crittenden v. Ayers, 624 F.3d 943, 958 (9th Cir.2010) (emphasis added), and I would therefore find a Batson violation at step three.[10]
For the reasons discussed above, I would not rely on the court-suggested reasons for Brown, Poindexter-Jackson, and Bekele. Even if I were to rely on those reasons, I would find that the prosecutor’s explanations for striking Brown and Poin-dexter-Jackson were clearly pretextual. The Oakland courthouse had an elevator and thus an inability to use stairs should not have been a reason to strike a juror. Moreover, Poindexter-Jackson did not ever indicate that she had any problems with stairs. The state barely relies on any of the prosecutor’s “secondary” reasons for these three jurors; these “secondary” reasons were the reasons that the prosecutor came up with on his own, and the state was wise not to rely on them because each of them is easily shown to be “makeweight” or completely unsupported by the record.
Moreover, as in Miller-El, the numbers are striking. The prosecutor here used his peremptory strikes on eight of the ten or eleven African-American jurors. In Miller-El I, the prosecutor struck nine of the ten eligible African-American jurors; and the Court held that “happenstance is unlikely to produce this disparity.” 537 U.S. at 340, 123 S.Ct. 1029.[11] As a result of the foregoing analysis, I would find that the “strike was motivated in substantial part by race,” see Crittenden v. Ayers, 624 F.3d 943, 958 (9th Cir.2010) (emphasis added), and I would remand with instructions to grant the writ.[12]

. AEDPA does not "prohibit a federal court from finding an application of a principle unreasonable when it involves a set of facts different from those of the case in which the principle was announced.” Panetti v. Quarterman, 551 U.S. 930, 953, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007). Instead, the Supreme Court has recognized that "even a general standard may be applied in an unreasonable manner.” Id. Although we must look to Supreme Court case law, "we may look to circuit precedent in determining what law is clearly established.” Byrd v. Lewis, 566 F.3d 855, 860 n. 5 (9th Cir.2009).

. In Miller-El II, an African-American juror remained on the seated jury and the Supreme Court found not only a prima facie Batson violation, but also a Batson violation on the merits. 545 U.S. at 240, 266, 125 S.Ct. 2317.

. The prosecutor then responded "What I will do, your honor, I believe by your statements, you're indicating there is a prima facie case, I will go ahead and justify all eight of the African Americans that were dismissed and the rationale I have for the record to make our record absolutely clear.” The trial court did not interject and the prosecutor gave his reasons.

.This is supported by the fact that when the trial judge denied the motion at the prima facie stage with respect to the first three African-American jurors who were struck, he said “as far as systematic exclusion is concerned, I would note that there remain three African Americans at this time. And maybe we should wait to see what happens further. I would deny the motion.”

. In addition to these two errors, the trial court also disagreed with defense counsel's assertion that one juror improperly struck was enough to constitute a Batson violation. The Supreme Court has repeatedly made clear, however, that the strike of a single juror is enough to constitute a Batson violation. See, e.g., Snyder v. Louisiana, 552 U.S. 472, 478, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008) ("the Constitution forbids striking even a single prospective juror for a discriminatory purpose.”). Our court has also held that "the Constitution forbids striking even a single prospective juror for a discriminatory purpose.” United States v. Vasquez-Lopez, 22 F.3d 900, 902 (9th Cir.1994)

. The California Court of Appeal, while employing some token comparative juror analysis, relied on an erroneous California Supreme Court decision that had counseled against placing "undue emphasis” on comparative juror analysis. In Miller-El II, the Supreme Court relied almost exclusively on a comparative juror analysis in finding a Batson violation. 545 U.S. at 241-52, 125 S.Ct. 2317. As we held in Kesser, "the principles expounded in Miller-El were clearly established Supreme Court law for AEDPA purposes” by 1992, if not earlier. Kesser v. Cambra, 465 F.3d 351, 360 (9th Cir.2006) (en banc). A proper step three inquiry treats comparative juror analysis as a "centerpiece of the Batson analysis.” Boyd v. Newland, 467 F.3d 1139, 1150 (9th Cir.2006). Moreover, the comparative juror analysis that the Court of Appeal did perform required the defendant to meet a nearly impossible burden — that the struck and seated jurors be essentially identical. For example, the Court found that the record "does not permit a true comparison” of Juror Brown and Juror 3 because, while both had been teachers, it was not clear "what level of education [Brown] taught, or for how long." The Supreme Court has made clear that "[a] per se rule that a defendant cannot win a Batson claim unless there is an exactly identical white juror would leave Batson inoperable; potential jurors are not products of a set of cookie cutters.” Miller-El II, 545 U.S. at 247 n. 6, 125 S.Ct. 2317.

. Indeed, "[a] court need not find all nonracial reasons pretextual in order to find racial discrimination.” Kesser, 465 F.3d at 360 (emphasis added); see also Lewis, 321 F.3d at 831 (”[a]fter analyzing each of the prosecutor’s proffered reasons, our precedent suggests that the court should then step back and evaluate all of the reasons together.”) (emphasis added).

. By improperly finding that the trial court had accepted the prosecutor’s reasons, the Court of Appeal was able to proceed directly to step three of the Batson inquiry. Moreover, this finding allowed it to base its analysis on the reasons that the trial court allegedly accepted and to give some deference to the trial court's assessment.

. As discussed earlier, if the trial court did deny the Batson motion at step one, as appears reasonably clear, it erred in doing so because the presence of African-Americans on the seated jury does not vitiate a prima facie case, and the burden of proving a prima facie case is merely a burden of production not persuasion. Given that the prosecutor here used his peremptory strikes on eight of the ten or eleven eligible African-American jurors, Carroll clearly had made out a prima facie case. In Miller-El II, the Supreme Court found that a similarly striking numerical disparity was even evidence tending to prove purposeful discrimination at step three, 537 U.S. at 340, 123 S.Ct. 1029. Given the low burden at the prima facie stage, that evidence was enough, in a consideration of "all relevant circumstances," see Batson, 476 U.S. at 96, 106 S.Ct. 1712, to make out a prima facie case.

. As described above, Carroll did make out a prima facie case, and the state does not contest this point. Carroll does not contest, and I agree, that the prosecutor met the low burden of production at step two.

. It is true that two African-Americans served on the jury. But, that does not end the Batson inquiry. The African-American juror who was not struck in Miller-El I went onto serve on the jury. 537 U.S. at 331, 123 S.Ct. 1029.

.Because of the foregoing analysis, I would not reach the question of whether the Court of Appeal’s decision was an unreasonable determination of the facts.